Richard **SINCOCK** et al., Plaintiffs,

v.

Rosalie **OBARA** et al., Defendants.

Civ. A. No. 2470.

United States District Court,
D. Delaware.

Dec. 29, 1970.

Vincent A. Theisen, and John G. Mulford, of Theisen, Lank & Kelleher, Wilmington, Del., for petitioner.

Ruth M. Ferrell, Deputy Atty. Gen., State of Del., Wilmington, Del., for the State of Del.

Before BIGGS, Circuit Judge, and WRIGHT and LAYTON, District Judges.

## OPINION OF THE COURT IN RESPECT TO COSTS AND FEES

BIGGS, Circuit Judge.

### I.

The present application is one for costs and fees [1] by the plaintiffs' counsel, Vincent A. Theisen, Esquire.

The case at bar has a long history and is resuméd in the following opinions of this court: Sincock v. Terry, D.C., 207 F.Supp. 205; D.C., 210 F.Supp. 395; D.C., 210 F.Supp. 396 (1962); Sincock v. Duffy, D.C., 215 F.Supp. 169 (1963); and Sincock v. Roman, D.C., 232 F.Supp. 844 (1964). More importantly, see the opinion of the Supreme Court in Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964), affirming the judgments entered following our opinion in Sincock v. Duffy, *supra*, 215 F. Supp. 169. See also Sincock v. Roman, D.C., 233 F.Supp. 615 (1964), and finally Sincock v. Gately, D.C., 262 F.Supp. 739 (1967). If these opinions are read, we think we need add little more to make clear the nature and extent of the litigation. We do state, however, that the suit is a class action brought by certain citizens and residents of rural New Castle County and of the City of Wilmington on their own behalf and on behalf of all other persons similarly situated. It was successfully prosecuted by Mr. Theisen and his associates [2] to a conclusion on January 27, 1968 when this three-judge court after a hearing in open court, no person appearing in opposition thereto, entered an order that House Bill 442, enacted by the General Assembly of the State of Delaware and signed into law on January 10, 1968 for the apportionment of the General Assembly complied with the provisions of the Equal Protection Clause of the Fourteenth Amendment and with the opinion of this court filed on January 10, 1967 in Sincock v. Gately, *supra*, and with the decree of this court filed January 24, 1967.[3] The order terminating the litigation provided in part as follows: "[I]t is Further Ordered that the jurisdiction retained by this Court by its decree of January 24, 1967 be and the same hereby is relinquished and jurisdiction will be retained for the sole purpose of fixing counsel fees, if any, and costs

[1] The Clerk of this court taxed costs on February 13, 1967 in the sum of $4.439.61.

[2] The application at bar is solely on behalf of Mr. Theisen. None of his associates seeks compensation.

[3] This court is, of course, a three-judge court convened pursuant to Title 28, United States Code, Sections 2281 and 2284.

The original complaint sought to have certain election provisions of the 1897 Constitution of the State of Delaware, providing for the election of members of the General Assembly, stricken down as constituting violations of the Fourteenth Amendment and the Civil Rights Acts, 28 U.S.C. Section 1343, and 42 U.S.C. Section 1983. As appears from the opinions filed herein, referred to in the second paragraph of this opinion, the relief sought by the plaintiffs changed from time to time as the General Assembly of Delaware attempted to enact amendments to the 1897 Constitution and passed statutes seeking to comply with the opinion and judgment of the Supreme Court of the United States and the opinions and judgments of this court.

herein and entering a judgment in respect thereto."

A hearing was held on July 24, 1970 after notice to the parties. Mr. Theisen appeared with an associate, John Mulford, Esquire. Mrs. Ruth M. Ferrell, a Deputy Attorney General, appeared for the newly-created Department of Justice of the State of Delaware.[4] Frank O'Donnell, Esquire, who had represented the Department of Elections of New Castle County in the litigation also appeared. No other counsel for any of the parties were present. No person objected and in substance all persons conceded that the facts set out in Mr. Theisen's affidavit in support of his application were correct. Mrs. Ferrell announced that the Department of Justice of Delaware did not oppose Mr. Theisen's application, stating however: "[W]e assume that the petitioner will seek an appropriation through the Legislature. There are no other state funds available which could be used to pay counsel fees, and we cannot make any commitment as to payment, of course. But the Department of Justice does not oppose this application."[5]

The parties appealed from the judgment of this court following its opinion in Sincock v. Terry, 210 F.Supp. 395, to the Supreme Court of the United States and authorized a fund to engage distinguished counsel, a member of the bar of the Supreme Court, Frederick B. Weiner, Esquire, and by 54 Delaware Laws, Chapter 90,[6] appropriated $95,000

4. Mrs. Ferrell was present at most, if not all, of the prior hearings, not only on behalf of the State of Delaware but also on behalf of the defendants. The State of Delaware is not named as a party to the proceedings. Mrs. Gately, formerly Mrs. Roman, was the Clerk of the Peace in and for New Castle County. The present Clerk of the Peace is Mrs. Rosalie Obara.

5. In a letter written by Mrs. Ferrell on August 14, 1970, in response to the Court's request for a brief by the State on the following question: "If the Court assesses counsel fees as part of the costs in Sincock v. Gately, does the Court have the power to order that the counsel fees and costs be paid by the State of Delaware?", she took the position that a suit to restrain unconstitutional action by an individual who is a state officer is not a suit against the State and thus not barred by the Eleventh Amendment to the United States Constitution, but went on to say: "On the other hand, suits naming individual state officers and seeking monetary recovery may not be so clearly outside the State's sovereign immunity guaranteed by the Eleventh Amendment. * * *" The jurisdiction, *i. e.*, the power of this Court in respect to these issues is discussed at a later point in this opinion.

6. Chapter 90 provides as follows: "An Act creating a Commission to take appropriate legal action concerning reapportionment of the General Assembly and making a supplemental appropriation therefor.

"WHEREAS, the United States District Court for the District of Delaware in the Case of Richard Sincock, et al. v. William Duffy, Jr., et al., being Civil Action No. 2470 has ruled that the present composition of the Delaware Assembly is unconstitutional; and

"WHEREAS, there is considerable legal opinion that the decision may be erroneous in all or part; and

"WHEREAS, the Supreme Court of the United States has not ruled that the Senate of the State Legislature must be apportioned on a population basis, although the United States District Court so ruled; and

"WHEREAS, the Supreme Court of the United States has not ruled that a state cannot adopt the Federal System for its state legislature, although the United States District Court so ruled; and

"WHEREAS, the manner of the method of apportionment of the Delaware General Assembly should be determined by the Court of last resort of the nation and not by an inferior court, in order to give finality to the matter; and

"WHEREAS, the Constitution of the State of Delaware is unique and there are cultural and historical factors peculiar to the State of Delaware, distinguishing the Delaware case from all others in the nation; and

"WHEREAS, it is in the best interest of the General Assembly and of the State of Delaware, and its people that the provisions of the Constitution of the

to pay the costs of the appeal, Mr. Weiner's fee and the fees of certain counsel representing the defendants. The Senate of the 122nd General Assembly adopted Resolution No. 46 which purported to appropriate $200,000 for the purpose of having an adjudication of the issues made by the Supreme Court of the United States.[7] This court was informed, however, at the hearing of July 24, 1970 that this fund by reason of the provisions of Chapter 90 had reverted to the General Fund of the State. As indicated, no counsel present objected to the amount of Mr. Theisen's application or any statement contained in his petition

State of Delaware be upheld and amended only by the elected Representatives of the people, NOW THEREFORE

"*Be it enacted by the General Assembly of the State of Delaware:*

"Section 1. There is hereby created a Reapportionment Appeal Commission to consist of the members of the Reapportionment Legal Review Committee of the Senate as created by the Senate of the 122nd General Assembly and three members of the House of Representatives of the 122nd General Assembly to be appointed by the Speaker of the House.

"Section 2. The Commission is hereby empowered and directed to do all things necessary and proper to appeal the decision of the United States District Court in the Case of Sincock et al. v. Duffy et al. (CA 2470) to the proper Appellate Court or Courts, including, but not limited to the retaining of counsel, payment of printing and other costs, hiring of personnel and payment of other expenses.

"Section 3. The sum of $95,000 is appropriated to the said Reapportionment Appeal Commission.

"Section 4. This Act is a supplementary appropriation and the money appropriated shall be paid by the State Treasurer out of funds in the General Fund of the State of Delaware, not otherwise appropriated.

"Section 5. The funds herein appropriated shall not revert to the General Fund until July 1, 1965.

"Section 6. The appropriation herein made shall be disbursed by the State Treasurer upon vouchers signed and approved by the Chairman and Secretary of the Commission.

"Section 7. The Commission created by this Act shall cease to exist on July 1, 1966.

"Approved June 28, 1963."

7. On motion of Mr. Hoey, SR 46 as follows was taken up for consideration in order to pass the Senate:

"SR 46—'Relating to the Appointment of a Committee to Consider Appropriate Legal Action Concerning Reapportionment of the General Assembly'.

"WHEREAS, the United States District Court for the District of Delaware in the Case of Richard Sincock et al. v. William Duffy, Jr., et al., being Civil Action No. 2470 has ruled that the present Constitutional make up of the Delaware General Assembly is illegal, and

"WHEREAS, there is considerable legal opinion that the decision is erroneous in all or part, and

"WHEREAS, it is in the best interest of the State of Delaware, and its people that the provisions of the Constitution of the State of Delaware be upheld or amended only by the elected Representatives of the people,

"Now, THEREFORE, BE IT RESOLVED by the Senate of the 122nd General Assembly that a Reapportionment Legal Review Committee is hereby created to consist of three Senators, to be appointed by the President of the Senate, to serve during the 122nd General Assembly, and that the Committee is hereby authorized and empowered to expend such sums, not in excess of $200,000, as may be necessary to retain counsel and expert witnesses, or to defray other expenses, including travel, secretarial, and printing in prosecuting a judicial review or appeal of the decision.

"AND BE IT FURTHER RESOLVED, that warrants for the payment of expenditures authorized herein shall be paid by the State Treasurer upon presentment of vouchers signed by the Chairman of the Committee.

"On the question 'Shall the Resolution Pass the Senate?' the yeas and nays were ordered which being taken were as follows:

"YEAS—Messrs. Bookhammer. Cook, Donovan, Hoey, Isaacs, Price, Robbins. Simpson, Tull, Wilgus, Pres. Pro Tem Steen—11.

"NAYS—Messrs. DuPont, (Mrs.) Lord, (Mrs.) Manning, Martin—4.

"ABSENT—Messrs. Johnson, McCullough—2.

"So the question was decided in the affirmative and the resolution having received the required constitutional majority passed the Senate."

or affidavit. Nor has there been objection from any other source.

We need not discuss at length the time consumed or the efforts expended by Mr. Theisen and his staff during the course of the litigation. The applicant's affidavit, exhibits and pleading afford, we believe, a rather complete picture of the litigation and of the efforts of plaintiffs' counsel. Mr. Theisen's petition states that his records show that in the period from June 1, 1962 through January 28, 1968 he and "his firm devoted more than 3,784 hours to the litigation" and "[t]his does not take into account the many, many hours spent in preparation, research and review which occurred in and out of Petitioner's firm." The petition further states: "While no time records are available for such additional time, Petitioner would estimate them to be in excess of 1,000 hours over the 6½ years of the litigation, making a total of approximately 4,784 hours. Petitioner and his partners, taking into account the items of expense connected with the firm's practice of law which includes overhead involved in the maintenance of the office, salaries of associates, secretarial and other help, supplies, rent, maintenance of a law library, furnishings, repairs and reasonable compensation through attorney fees to members of the firm and associates, had his usual charge for attorney services established at $50 per hour for office work and $100 per hour for Court work." The charges of Mr. Victor Battaglia, an associate, were fixed at the rate of $35 an hour for office work and $75 an hour for court work.

Mr. Theisen estimates that the amount of time devoted to the trial of this case was in excess of 600 hours, divided approximately equally between him and his associate, Victor Battaglia, Esquire, and that of the remaining 4,184 hours, petitioner estimated that 40% or 1,673 hours were devoted to the litigation by him and that 60% or 2,510 hours were devoted to the litigation by Mr. Battaglia.

We find that the foregoing uncontradicted statements contain facts that are fully supported by the evidence and we are of the opinion that the requested amount of compensation and out-of-pocket expenses are reasonable. We take judicial notice that the amount sought as compensation is in accord with fees of members of the Bar of Delaware of a standing like unto that of Mr. Theisen. We note also that Mr. Theisen took the case on a partial-contingent fee basis.[8] We point out that the result obtained by the petitioner and his associates was indeed excellent. The State of Delaware has been properly and lawfully reapportioned by the General Assembly in accordance with the law laid down by the Supreme Court of the United States. See Sincock v. Gately, 262 F.Supp. 739, *supra*. We observe that Mr. Theisen has received by way of compensation and costs the sum of $31,208.25. The balance requested, which includes out-of-pocket expenses in the amount of $4,376.16, is $197,167.91. To sum up, the petition for allowance of attorney fees and costs sets out the following:

| | |
|---|---:|
| Attorney fees | $224,000.00 |
| Out of Pocket Disbursements | 4,376.16 |
| | $228,376.16 |
| Less Payments by Reapportionment Committee [9] | 31,208.25 |
| | $197,167.91 |

8. It is well settled that successful counsel *retained on a contingent-fee basis is* entitled to larger compensation than if he had conducted the litigation for a fixed fee. High Point Casket Co. v. Wheeler, 182 N.C. 459, 109 S.E. 378 (1921); McCaughey v. Wilson, 130 Minn. 196, 153 N.W. 310 (1915). See also 135 A.L.R. 859–867 (1941).

9. The Reapportionment Committee comprised of citizens of Delaware is not to be confused with the "Reapportionment Appeal Commission" or the "Reapportionment Legal Review Committee". See note 6, *supra*.

There would appear to be no opposition to the allowances sought by Mr. Theisen but we must decide whether or not they are within the power of this court to grant, and if so who can or should be held liable therefor. We discuss these issues under the next heading.

## II.

Assuming, as we have found here, that Mr. Theisen rendered valuable services to the State of Delaware and to its citizens for which he should be adequately compensated, does this court have the power to award him that compensation to be taxed as costs against the State of Delaware or against the individual defendants, all of whom are State or County officers, in their respective representative capacities, pursuant to Rule 54 of the Federal Rules of Civil Procedure, 28 U.S.C.?

The Department of Justice of the State of Delaware was represented, as we have said, by Mrs. Ferrell, a Deputy Attorney General. In her letter memorandum of law to this court, Mrs. Ferrell stated: "It has long been held that * * a suit [such as that at bar] to *restrain* unconstitutional action threatened by an individual who is a state officer is not a suit against the State and thus not barred by the Eleventh Amendment of the U. S. Constitution." [10] (Emphasis added). See Georgia R. R. and Banking Co. v. Redwine, 342 U.S. 299, 304, 72 S.Ct. 321, 96 L.Ed. 335 (1952) (assessment and collection of taxes); Harrison v. St. Louis and San Francisco R. R. Co., 232 U.S. 318, 332, 34 S.Ct. 333, 58 L.Ed. 621 (1914) (revocation of corporate charter); Mann v. Davis, 213 F.Supp. 577, 579 (E.D.Va.1962) (legislative reapportionment), affirmed 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964) and Lisco v. McNichols, 208 F.Supp. 471, 476 (D.Colo.1962) (legislative reapportionment). But it will be observed that none of the decisions just cited granted a money judgment against a State or a state employee. We cannot find any decision supported by a reasoned opinion which gives such a result.[11] The closest

10. Amendment XI: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State. or by Citizens or Subjects of any Foreign State." The Eleventh Amendment has been held by the Supreme Court to deny to the Federal Courts authority to entertain a suit brought by private parties against the State without its consent. Ford Motor Co. v. Department of the Treasury of Indiana. 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). See also Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), in which by judicial construction it was held that the Eleventh Amendment applies to a suit brought against a State by one of its own citizens as well as a suit brought by a citizen of another State.

The Eleventh Amendment issue was not raised by the Department of Justice of the State of Delaware but was raised by this court *sua sponte*.

11. Mr. Theisen relies on the "Findings and Order" in State of Wisconsin v. Zimmerman, Secretary of State of Wisconsin, Civil Action 3540 in the United States District Court for the Western District of Wisconsin, apparently a three-judge court which had before it an apportionment case involving the redistricting and apportionment based on the 1960 Federal Census. In this case the Special Master's fee and disbursements were allowed as costs and ordered to be paid by the *plaintiffs*, citizens of Wisconsin, not by Zimmerman, the Secretary of State.

Mr. Theisen also places emphasis on Pettaway v. County School Board of Surry County, 230 F.Supp. 480 (E.D. Va.1964). a desegregation case in which counsel for the *plaintiffs* were allowed attorneys fees. But these were authorized by the Civil Rights Act of 1964, 42 U.S.C. § 2000a–3(b).

Mr. Theisen also relies on Allen v. County School Board of Prince Edward County. Civil Action No. 1333 in the United States District Court for the Eastern District of Virginia, Richmond Division, "Order on Findings". But it would appear again that the allowance of counsel fees in this case to the *plaintiffs* was also authorized by the section of the Civil Rights Act of 1964 cited in the preceding paragraph.

case to the position asserted by Mr. Theisen which we can find or which has been cited to us is State of Utah v. United States, 304 F.2d 23, 27 (10 Cir. 1962), cert. denied 371 U.S. 826, 83 S.Ct. 47, 9 L.Ed.2d 65 (1962). But there the taxing of costs against the State of Utah found support in the fact that the State of Utah was not only a party litigant as a defendant but also as a cross-complainant.[12] There have been, however, judgments against states or state officers for costs and several such cases are cited on Mr. Theisen's brief or in the appendices accompanying it.[13] In other opinions cited in Mr. Theisen's supplemental brief such as Griffin v. County School Board of Prince Edward, 363 F.2d 206 (4 Cir. 1966), cert. denied 385 U.S. 960, 87 S.Ct. 395, 17 L.Ed.2d 305 (1966); Bell v. School Board of Powhatan County, 321 F.2d 494 (4 Cir. 1963), and Pettaway v. County School Board of Surry County, 230 F.Supp. 480 (E.D.Va.1964), fees have been allowed under the Civil Rights Act of 1964 which provides for the payment of counsel fees. See 42 U.S.C. § 2000a–3(b).

■ As has been repeatedly stated it is the general rule that counsel fees will not be allowed in the absence of an authorizing statute, but we might be willing to go beyond this principle and apply the tests and doctrine enunciated by Mr. Justice Harlan in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), if we could hold either the State of Delaware or the individual defendants liable in their representative capacities. There can be no doubt of the success of Mr. Theisen's representation and we believe it to be a fact that reapportionment suits will not often be maintained by counsel working without compensation. We think it is clear that the real party in interest is the State of Delaware and not the defendants. As was so clearly stated in Briggs v. Sagers, 301 F.Supp. 1023 (D. Utah 1969), by Judge Christensen, "[T]he matter of jurisdiction is decisive before this court. Despite individual defendants named, the suit is wholly against the State of Utah in substance and would have direct impact upon the funds and fiscal management of the State. Under no theory can it be said that the sovereign immunity has been waived by the State." [14] The suit was

Mr. Theisen has set out in an appendix to his brief, as Exhibits "A", "B" and "C", matter relevant to the cases referred to in the preceding three paragraphs. We have attached Mr. Theisen's document as an appendix to this opinion.

12. Circuit Judge Bratton cited in support of his decision Fairmont Creamery Co. v. Minnesota, 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927). In this case the Supreme Court by Mr. Chief Justice Taft held that a money judgment for costs could be imposed upon the United States and though there is provocative language in the opinion, we cannot find that it substantially aids Mr. Theisen.

He also relies heavily on two judgments reported in Volume II, "Court Decisions on Legislative Apportionment, National Municipal League, New York City." One judgment is in Sims v. Frink, the opinion in which is reported at 205 F.Supp. 245 (M.D.Ala.1962). In Sims the Three-Judge Court stated in the judgment: "The costs incurred in this proceeding are hereby ordered to be and they are taxed against the defend-

ants, for which execution may issue." The defendants referred to were State or County officers of the State of Alabama, but the question of costs does not seem to have been a subject of discussion by the Three-Judge Court. The other case is Harris v. Shanahan, in the Second Division, District Court of Shawnee County, Kansas. On a judgment entered by Judge Marion Beatty (also reported in Volume II. "Court Decisions on Legislative Apportionment"), the final lines of the judgment stated: "IT IS FURTHER ORDERED that defendants pay the costs of this action taxed at $————." We do not attach the importance to these judgments that Mr. Theisen does because there is no discussion by the respective courts of the law or philosophy on which they are based.

13. Copies of the appendices are attached to this opinion, marked "Appendix". See note 11, *supra.*

14. This decision was reversed on other grounds in 424 F.2d 130 (10 Cir. 1970), cert. denied October 12, 1970, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59. It

one involving the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) and jurisdiction was laid under 28 U.S.C. § 1337, but these facts are irrelevant in the context in which we cite and quote Judge Christensen's opinion.

█ There is, however, one final string to Mr. Theisen's bow which we hesitate to break but we must. It is clear that the General Assembly entered the lists in aid of the then existing apportionment provisions of the Delaware Constitution of 1897.[15] It is argued and we think it may be a sound argument that by appropriating money for counsel fees and other costs to defend the apportionment provisions of that Constitution, by setting up a Reapportionment Appeal Commission and a Reapportionment Legal Review Committee,[16] and by paying counsel fees and other costs, the sovereign State of Delaware waived any prohibitory application of the Eleventh Amendment. But we believe that such waiver, if waiver there was, extended only to costs, fees and other expenditures made by the Reapportionment Legal Review Committee, the unexpended balance of such funds having reverted to the General Fund.[17] This means that if Mr. Theisen is to be paid a fee the necessary additional funds will have to be created by a new legislative appropriation.[18] We conclude that Mr. Theisen's petition must be dismissed for want of jurisdiction. We reiterate, however, that he has done fine and spendid work for the State of Delaware and its citizens. In the context of this case, however, thanks and praise cannot be deemed to be too valuable considerations. We hope that Mr. Theisen will be rewarded with just compensation by grace of the General Assembly.

The foregoing is deemed to constitute findings of fact and conclusions of law as required by Rule 52(a), Fed.R.Civ. Proc., 28 U.S.C.

### APPENDIX

### EXHIBIT A

United States District Court
Western District of
Wisconsin

State of Wisconsin,
Mrs. Elfrieda Wilson,
Dan Smith, Robert
E. Smith, Lyle Link
and Thomas Miglautsch,
            Plaintiffs,

v.            Civil Action
            No. 3540

Robert C. Zimmerman,
Secretary of State of
the State of Wisconsin,
            Defendant.

### FINDINGS AND ORDER

The instant suit was brought by the State of Wisconsin which was represented by its chief law officer, the Attorney General. The complaint emphasized that the State of Wisconsin was appearing in the role of *parens patriae.*

---

should be noted that the decision of the Court of Appeals was based on an interpretation of the Fair Labor Standards Act, *i. e.,* the Commerce Clause, 29 U.S. C. § 201 *et seq.,* and not, as here, on an interpretation of the Eleventh Amendment. See also Parden v. Terminal Railway of Alabama State Docks Department, 377 U.S. 184, 84 S.Ct. 1207. 12 L.Ed.2d 233 (1964).

15. See notes 6 and 7, *supra.*

16. The committee to oppose reapportionment in the House of Representatives was designated as the "Reapportionment Appeal Commission" and it consisted of members of the "Reapportionment Legal Review Committee" of the Senate, three Senators, as provided in SR 46, and three members of the House of Representatives.

17. These included the fees which were paid to a distinguished Washington counsel and as indicated in the transcript of the hearing of July 24. 1970, at pp. 18–19, to certain other individuals.

18. Indeed, Mr. Theisen told the court, p. 17 of the transcript of the hearing of July 24, 1970: "I would tell the Court that I would not proceed against any one of these defendants [the State and County officers] individually. It would have to go through them through the state, or I wouldn't proceed."

On objection filed by the defendant, this court ruled that the State of Wisconsin, as the sole plaintiff, did not have the capacity to sue and raise the federal question that citizens had been deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment of the Constitution of the United States. The suit was ordered dismissed unless there were joined with the State of Wisconsin as additional plaintiffs individual electors who had been adversely affected by the failure of the Wisconsin state legislature to redistrict and apportion following the 1960 federal census. Five electors, residents in Waukesha County, joined as coplaintiffs, and the suit was not dismissed. Thereafter, defendant moved that the State of Wisconsin be dismissed as a party plaintiff. This court denied said motion. Among the reasons for such denial were that the State of Wisconsin was acting in this suit in the role of *parens patriae* and had a real interest in seeing that the voting rights and privileges of all of its citizens were protected, and that under Wisconsin state court practice, State ex rel. Attorney General v. Cunningham, 81 Wis. 440, 51 N.W. 724 (1892), and State ex rel. Lamb v. Cunningham, 83 Wis. 90, 53 N.W. 35 (1892), it is only the Attorney General who had the right as well as the duty, on behalf of the State of Wisconsin, to bring a lawsuit to question the action or the lack of action of the state legislature to "district anew" after a federal census.

The Special Master, Emmert L. Wingert, having filed a statement for his services and disbursements, including statements for the obligations incurred by him for the Court Reporter, John R. Adams, and the expert witness, Dr. C. K. Alexander, and this court finding said fees to be reasonable in amount and the disbursements proper; and the court having notified the parties that any objection to the statement of fees and disbursements of the Special Master, including any obligations incurred by him, could be filed on or before August 18, 1962, and no objection having been filed thereto;

It is ordered that the statement of the Special Master, Emmert L. Wingert, for his services and disbursements and the statements for obligations incurred by him for the Court Reporter, John R. Adams, and the expert witness, Dr. C. K. Alexander, be and the same are hereby approved.

It is further ordered that the clerk of this court enter judgment dismissing the complaint without prejudice to the commencement of a new action after August 1, 1963, and against the plaintiffs, and each of them, for the services and disbursements of the Special Master, Emmert L. Wingert, including the obligations incurred by him for the Court Reporter, John R. Adams, and the expert witness, Dr. C. K. Alexander, in the total sum of $5,237.62, and upon such payment the clerk shall satisfy said judgment and disburse said funds to the said Special Master Court Reporter, and expert witness.

Dated this 22 day of August, 1962.

(s) F. Ryan Duffy
F. Ryan Duffy,
U. S. Circuit Judge

(s) Patrick T. Stone
Patrick T. Stone,
U. S. District Judge

(s) Kenneth P. Grubb
Kenneth P. Grubb,
U. S. District Judge

In the District Court of the United States of America for the Western District of Wisconsin

State of Wisconsin,
Mrs. Elfrieda Wilson,
Dan Smith, Robert
E. Smith, Lyle Link
and Thomas Miglautsch,
    Plaintiffs,
  —vs—        Civil Action
               No. 3540
Robert C. Zimmerman,
Secretary of State of
the State of Wisconsin,
    Defendant.

## JUDGMENT

In accordance with the Findings and Order of the Honorable F. Ryan Duffy,

United States Circuit Judge, and the Honorable Patrick T. Stone and the Honorable Kenneth P. Grubb, United States District Judges, signed and filed on August 22, 1962,

Judgment is hereby entered dismissing the complaint in the above entitled action, without prejudice to the commencement of a new action after August 1, 1963.

Judgment is further entered against the plaintiffs, and each of them, for the services and disbursements of the Special Master, Emmert L. Wingert, including the obligations incurred by him for the Court Reporter, John R. Adams, and the expert witness, Dr. C. K. Alexander, in the total sum of $5,237.62.

Madison, Wisconsin, August 24, 1962.

*Lucile M. Alstad*

Clerk, United States District Court
Western District of Wisconsin

Form No. 713

August 5 _____, 19⁷⁰

Mr. Vincent Theisen
Attorney at Law
1113 Wilmington Trust Building
Wilmington, Delaware 19801

*To* Clerk, U. S. District Court
    *for the* Western *District of* Wisconsin . *Dr.*
    Postoffice Box 432, Madison, Wisconsin 53701

| 8/5/70 | 1 | page certified copy | | | | $.50 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Re: State of Wisconsin v. Zimmerman | | | | | | | | | | |
| | | 5340-Civil | | | | | | | | | | |
| | | PLEASE RETURN COPY OF THIS STATEMENT WITH YOUR REMITTANCE. | | | | | | | | | | |

[A3529]

## EXHIBIT B

In the United States District Court
for the Eastern District of
Virginia

Richmond Division

Avis M. Pettaway,
et al.

      v.           Civil Action
                  No. 3766

County School Board
of Surry County,
Virginia, et al.

## ORDER ON MANDATE

This cause having been remanded by the United States Court of Appeals for the Fourth Circuit for amendment of the order entered June 18, 1964, it is adjudged and ordered:

First: Paragraph 2 of the order of June 18, 1964 is amended to read as follows:

2. The Board of Supervisors of Surry County, A. T. Sowder, Treasurer of Surry County, the State Board of Education, Woodrow W. Wilkerson,

Superintendent of Public Instruction, and their successors, officers, agents and employees, and those persons in active concert or participation with them who received actual notice of this order by personal service or otherwise are enjoined and restrained from processing or approving applications for, or paying, tuition grants to persons residing in Surry County for use in any school predominantly maintained by such tuition grants, including the school of the Surry County Educational Foundation, so long as such school refuses to accept pupils on account of their race or color.

Second: In all other respects the order entered June 18, 1964 remains unchanged.

Third: Counsel for the plaintiffs are allowed attorneys' fees in the stipulated amount of $3,500 to be paid by the defendants.

Fourth: This cause is retained on the docket with leave to any party to petition for further relief.

Let the Clerk send copies of this order to counsel of record.

_____
United States District Judge

April 20, 1965

EXHIBIT C

In the United States District Court for the Eastern District of Virginia

Richmond Division

Eva Allen, et al.,
      Plaintiffs
    v.        Civil Action
County School Board   No. 1333
of Prince Edward
County, Virginia,
et al.,
      Defendants

ORDER ON FINDINGS

This cause came on again the 23rd day of April, 1965 for further inquiry into the facts surrounding the [tuition grant] payments made August 4–5, 1964; for hearing upon the order entered February 8, 1965 directing that W. W. Vaughan, C. W. Gates, H. M. Jenkins, Charles B. Pickett, John C. Steck and H. E. Carwile, Jr. show cause, if any they could, why they should not be held in contempt of this Court for failure to comply with its order entered herein on the 9th day of July, 1964; and for hearing upon plaintiffs' motion for an award of counsel fees.

All motions were consolidated for hearing.

The members of the Board of Supervisors appeared in person and by counsel. All parties in interest were fully heard and given the opportunity of presenting such evidence and introducing such exhibits as they deemed pertinent to the motions under consideration.

From the testimony and exhibits thus produced the Court finds that:

The appellants filed a motion to accelerate their appeal (in re the payment of these tuition grants) to the Fourth Circuit on or about July 28, 1964.

Mr. Frederick T. Gray, of counsel for the Superintendent of Public Instruction of Virginia, chanced to see Maurice Dean, Clerk of the United States Court of Appeals for the Fourth Circuit, at or near Tenth and Main Streets in Richmond on or about July 31, 1964, at which time Mr. Dean mentioned that Mr. Gray would very likely be back before the Court of Appeals since a motion to accelerate the appeal in the Prince Edward school case was in the offing.

Shortly thereafter Mr. Dean told Mr. Gray that Chief Judge Haynsworth wanted to know whether or not it was possible to get a stipulation from the State and County authorities that the tuition grant payments would not be paid pending the hearing on the appeal.

Mr. Gray immediately advised the Attorney General and counsel for the Board of Supervisors of this request. He was then informed that the Board of Supervisors would not agree to enter into the

suggested stipulation. Mr. Dean was so told during the late evening of August 4, 1964.

Mr. Dean again called Mr. Gray the following morning informing him that the stipulation desired was not that the tuition grants would not be paid until this case had been decided but rather that the grants would not be paid prior to the normal date for the processing and payment of the grants.

While Mr. Gray was relaying this information to the Attorney General, he received a telephone call from the Commonwealth Attorney of Prince Edward County advising him that during the night of August 4, 1964 the Board of Supervisors had authorized the payment of the tuition grants and that the grants had in fact been made and actually paid to the citizens on the morning of August 5th. This took the State officials by complete surprise as there had been no discussion between the State and County officials concerning advancing the date for the payment of the grants.

Mr. Gray then called Mr. Dean and told him the grants had been paid that morning.

The Board of Supervisors of Prince Edward County held a meeting on the morning of August 4, 1964 at which time Warren Scott and four of the Negro citizens appeared and filed an unsigned petition bearing ten hundred four typewritten names requesting that the Board of Supervisors allocate additional funds to be used for the purpose of public education. No action was then taken.

Shortly after adjournment of the Board meeting, Supervisor Jenkins and Supervisor Steck met with a Mr. Taylor and other interested citizens for the purpose of finding a way to pay the '64–'65 tuition grants prior to the time the Court of Appeals could enter an order staying these payments. [It was then known to Mr. Jenkins and to the other members of the group that there had been discussions between Mr. Gray and Mr. Dean in re the possibility of the County agreeing not to make any tuition grant payments during the pendency of the appeal.]

The Commonwealth Attorney and two other members of the Board of Supervisors were then called. Those assembled agreed that if the Board of Supervisors would increase the tuition grants to $310.00 for high school and $290.00 for elementary school and authorize the immediate payment thereof, this could be done before the Court of Appeals could do anything about it.

The four Board members and the Commonwealth Attorney then went to the home of the chairman of the Board of Supervisors to advise him of what they had in mind and to determine whether or not a special meeting of the Board of Supervisors could be called the next morning for the purpose of expediting the payment of the '64–'65 tuition grants. The chairman, after being advised by the Board's special counsel and the Commonwealth Attorney that such a resolution on the part of the Board of Supervisors would be legal, called a special meeting of the Board for 8:00 a. m. August 5th. At that meeting the Board passed the resolution which provided that the grants should be paid half on or before September 1, 1964 and half on or before January 1, 1965.

In the interim, that is, between the meeting at Chairman Vaughan's house and eight o'clock the next morning, Board Member Jenkins and other members of the citizens' committee made arrangements to telephone the parents of the children then attending the Prince Edward School Foundation schools advising them if they came down that night and made application they could get half the tuition money that morning.

Some twenty or thirty volunteers assisted the secretary of the Board in processing the applications and making out the necessary checks. County bonds were sold in Richmond the next morning to raise the money necessary for the payment of these checks.

Twelve hundred seventeen tuition grant applications were filed during the night of August 4–5. All of these applications were for the '64–'65 school year. Each applicant was paid one-half

of the amount applied for. Most, if not all, of the applicants were children enrolled in the Prince Edward School Foundation schools for the year '64–'65.

There being no evidence that the money thus paid covered school years prior to '64–'65, the Court concludes that the payments made August 4–5, 1964 were not violative of the order entered herein July 9, 1964. The show cause order issued against the members of the Board of Supervisors February 8, 1965 will be dismissed, and it is so ordered.

Counsel for the plaintiffs seek counsel fees in the amount of $21,760.00 for legal services rendered since June 1960. (The public schools were closed in Prince Edward County at the end of the '59–'60 school year.) Counsel for the defendants do not seriously question the correctness of the itemized account as filed herein; they question the propriety of awarding any counsel fees in a case of this kind.

It is clear the defendants caused the plaintiffs to incur extraordinary legal expenses in their endeavor to being admitted to the public schools on a non-discriminatory basis—especially so since the entry of the April 22, 1960 order of this Court.

Counsel fees will be awarded in the amount of $7,500.00; fifty per cent to be paid by the defendant Board of Supervisors of Prince Edward County, Virginia; twenty-five per cent to be paid by the defendant County School Board of Prince Edward County, Virginia; and twenty-five per cent to be paid by the defendant State Board of Education of the Commonwealth of Virginia, and it is so ordered.

The amount awarded shall be paid to S. W. Tucker, who is herewith directed to pro rate the same among associate counsel as he deems proper and just.

The Clerk will forward six attested copies of these findings to the Clerk of the United States Court of Appeals for the Fourth Circuit for such further consideration as that Court deems proper.

The Clerk will also mail copies to all counsel of record.

At Alexandria

United States District Judge