[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 613 
The defendant was a common carrier of the goods in question, from the city of New York to Detroit, Michigan. It received them at New York "to be forwarded to Detroit only," and the express terms of the undertaking exclude any inference or implication that it was to carry them further. But Detroit was not the final destination of the property. The box was marked "Day Lathrop, Dryden, Michigan, via Ridgway," clearly indicating that Dryden was the ultimate destination, and that the transit was by some agency to be continued, from Detroit via Ridgway, to the place of consignment.
The defendant was not bound to carry the goods beyond Detroit. It performed its contract in respect to the actual carriage upon carrying them to that place. But the obligation of a carrier is not fully discharged by transporting the goods from the place of shipment to the place of consignment, or in case of an intermediate carrier, from the place of shipment to the end of his route. The undertaking to transport the goods to a particular place, includes the duty of delivering them there in safety. (DeMott v. Laraway, 14 Wend., 225.) What is due delivery depends upon the nature of the carriage; whether by ship, rail or other conveyance, and also upon the facts whether the carrier in the particular case is an intermediate carrier, or is the one who transports the goods to their final destination, and the mode of delivery may, in some cases, be controlled by custom and usage. In all cases, however, there must be a delivery by the carrier, or something tantamount to a delivery, before he rids himself of his responsibility as such. In the case of an intermediate carrier, who accepts goods to be carried to a point short of their final destination, directed to a place beyond the termination of his route, the law from such direction, in the absence of other special circumstances, implies an undertaking on his part to deliver them, at the end of his route, to the next succeeding carrier in the line of transportation, and if such carrier refuses or neglects to receive them, the first carrier may, store the goods, and then the nature of the bailment changes and he *Page 616 
is relieved from the stringent responsibility originally assumed, and the liability of a warehouseman is substituted. (VanSantvoord v. St. John, 6 Hill, 157; Goold v. Chapin,20 N Y, 259; McDonald v. Western R.R. Co., 34 id., 497; Root
v. The Great Western R.R. Co., 45 id., 524; Mills v.Michigan Cen. R.R. Co., id., 622; Nutting v. Conn. RiverR.R. Co., 1 Gray, 502.)
In this case the defendant did not, on the arrival of the goods at Detroit, offer them to any other carrier for transportation beyond that point, or give notice to any other carrier of their arrival. They were deposited in the defendant's warehouse and remained there for about twenty days, when they were destroyed by an accidental fire which happened without fault or negligence of the defendant. The failure to deliver to another carrier did not result from the fact that there was no carrier on the route designated by the direction, to whom delivery could be made. The Grand Trunk Railway Company operated a line of railway from Detroit to Ridgway, a station on that road, and was the customary and usual carrier to Ridgway, of goods sent from Detroit to Dryden via Ridgway, and, so far as appears, there was no other public carrier between these places.
The defendant not having delivered or tendered the goods to the Grand Trunk Railway, is, under the general rule of law, liable for the loss, and it must be so adjudged unless the case is taken out of the rule by the special circumstances relied upon.
There are, however, two grounds upon which it is claimed that the defendant was excused from delivering the goods to the Grand Trunk Railway: first, that by a regulation of that company of which the defendant had notice it would not receive goods for transportation unless the shipper would accept a receipt containing certain exemptions from the liability imposed upon carriers at common law; and, second, that by a custom of the defendant, goods carried by its line to Detroit destined to points on the Grand Trunk Railway, were detained until notice was given to consignees, and *Page 617 
their direction taken as to sending them by that road, and that such notice was given in this case, and the goods were destroyed before any direction had been given. We do not think that either of these answers is sufficient, under the circumstances of this case, to relieve the defendant from liability.
The direction on the box was a clear indication that Rawson, Buckley Co., the shippers, designed that it should be sent from Detroit to Dryden via Ridgway, and was in effect a direction to the defendant to send them by the usual mode of carriage from Detroit to that point. The defendant was entitled to regard the shippers as authorized to direct as to the mode of transportation, whatever their actual relation to the goods may have been, whether in fact they or the consignees were the owners. The direction that the goods should be sent via Ridgway, coupled with the fact that the Grand Trunk Railway was the usual carrier between Detroit and that place, authorized the defendant to deliver the goods to that company, upon the usual contract required, and in case of loss after such delivery and while they were in possession of that company, the defendant would not have been liable, although the Grand Trunk Railway under its contract might have been exempted from liability also. (Nelson v. TheHudson River R.R. Co., 48 N.Y., 507; Squire v. New YorkCentral R.R. Co., 98 Mass., 240; Barnett v. Lond. andN.W.R.R. Co., 5 Hurl. Nor., 604.)
There is nothing decided in the case of Lamb v. Cam. andAmboy R.R. Co. (46 N.Y., 271), which conflicts with this view. In that case there was no indication in the contract of the first carrier, as to the particular route or company by which the goods were to be sent from Chicago, nor so far as it appears was it necessary that the first carrier should consent to a restricted liability in order to procure the goods to be carried from that point, and as he had guaranteed that they should be carried to the final destination at a specified through rate, it perhaps might justly be inferred that they were to be carried from Chicago under a contract as favorable *Page 618 
as that made with the first carrier. We, however, confine our decision to the case presented on this record, and are of opinion that the defendant was not excused from tendering the goods to the Grand Trunk Railway, and that he would have been justified in delivering them to that road, and in accepting the usual contract required by the company.
The defence founded upon the alleged custom is we think wholly insufficient. The proof is that up to a short time before the shipment of these goods, the Grand Trunk Railway had not exacted of the defendant a compliance with the general rule of the company, but had received its goods on the forms used by the defendant. This had been changed in 1865, or 1866, and the regulation was thereafter enforced as to goods received from the defendant. The defendant from that time was accustomed to detain goods destined to points on the Grand Trunk Railway, and advise the consignees, and await their direction before sending them forward, and in this case written notice was sent to "Day 
Lathrop" of the arrival of the goods, but they gave no instructions.
It is said in Van Santvoord v. St. John (6 Hill, 160), that a carrier who receives a box marked in a particular way, without any directions, except such as may be inferred from the marks themselves, has a right to presume that the consignor intends that he shall transport and dispose of them in the usual and customary way. That was the case of a carrier by tow boats on the Hudson river, who received a package marked, "J. Petrie, Little Falls, Herkimer county," and it was held that the first carrier was justified in delivering it at the end of his route to a succeeding carrier by canal, and was discharged thereby from further responsibility; it being shown that there was a general, established and uniform usage in the business, that such delivery might be made; and it was also held that the consignor was bound by it whether he knew it or not. And in Gibson v. Culver (17 Wend., 305) it was held that the general obligation created by law in respect to the mode of delivery by a carrier, may be controlled by a uniform usage and course of the business in *Page 619 
which he is engaged. In this case the proof falls far short of establishing a custom superseding the general obligation of the defendant to make delivery of the goods to the next carrier. At most it was a usage recently established, and confined to the particular business of the defendant at a particular place, not known to the plaintiffs, and which they were not bound to ascertain.
The usage relied upon in this case lacks the essential elements of a valid usage. It is neither general, established, uniform, or notorious. It would be unreasonable to give it effect in this case, to defeat a recovery by the plaintiff. The parties did not make their contract in reference to it, and cannot be presumed to have done so.
It is the general rule, that a local usage must be shown to have been known to a party before he will be held to be bound by it. (Smith v. Wright, 1 Caines, 43; Stevens v. Reeves, 9 Pick., 198; Krechner v. Venus, 12 Moore's P.C.C., 361;Bartlett v. Pentland, 10 B. C., 760; 1 Smith L.C., 836; 2 Parsons on Cont., 541, note.)
The conclusion is, that the defendant, at the time of the fire, held the goods as a common carrier, and is responsible for the loss under the general rules of law. If the exemption in the bill of lading from liability for loss by fire can be construed as applying to the goods after the transit to Detroit was ended, the delay in delivering them to the Grand Trunk Railway was a violation of duty which deprived the defendant of the benefit of it. (Michaels v. N.Y. Central R.R. Co., 30 N.Y., 564; Read
v. Spaulding, id., 630; Maghee v. Cam. and Amboy R.R. Co.,
45 id., 514; Condict v. The G.T.R.R. Co., 54 id., 500.)
The judgment of the General Term should be affirmed.
All concur, except GROVER, J., dissenting; ALLEN, J., not sitting.
Judgment affirmed. *Page 620