BUSTON v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Third Circuit. January 19, 1903.)

No. 12.

**1. CARRIERS OF GOODS—CONNECTING CARRIERS—DUTY IN RESPECT TO FORWARDING.**

. An intermediate carrier, who receives goods to be carried to a point short of their final destination, is bound only to use reasonable diligence to secure further transportation by tendering them to the connecting line, and, if acceptance be refused, then to notify the consignor or ·consignee without unreasonable delay, and store or otherwise care for the goods while awaiting instructions. Having done this, its liability as a carrier will cease, and liability as a warehouseman be substituted.

**2. SAME.**

Defendant railroad company received cotton from a connecting carrier, to be transported over its line, and delivered to a steamship company for further shipment. Before it was tendered, fire broke out in two of the cars, and on a subsequent tender the steamship company refused to receive it, deeming it in unsafe condition, and the steamer on which it was to be shipped sailed without it. Notice was promptly given to the shipper, and instructions asked for, but none were given. Defendant again offered the cotton to the steamship company to be taken on a later vessel, but, another fire having occurred before the time for sailing, the company definitely refused to take it. The owner was again notified, and, no instructions being received, defendant stored the cotton subject to the owner's order, having held it over a month. Defendant was in no way responsible for the fires nor for the condition of the cotton. *Held*, that it had discharged its duty by tendering the cotton to the connecting carrier, and notifying the owner of its refusal, and was not required to put it in condition and again tender it, but was justified in storing it to await the owner's orders.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 116 Fed. 235.

Samuel Dickson and R. C. Dale, for plaintiff in error.

Frank P. Prichard, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. On July 19, 1900, the New York, Philadelphia & Norfolk Railroad Company contracted with the agents of R. A. Lee & Co., of Charlotte, N. C., for the transportation of 300 bales of compressed cotton from Norfolk, Va., by rail to Philadelphia, and thence by steamer of the American Line, appointed to sail on August 11, 1900, to Liverpool, England. Accordingly, the said railroad company afterwards issued its through bills

¶ 1. See Carriers, vol. 9, Cent. Dig. §§ 750, 755.

of lading for the cotton, of which 50 bales were consigned to the order of H. B. Moses, Liverpool, and the remaining 250 bales were consigned to the order of R. A. Lee & Co., Liverpool, "to be carried to the port of Philadelphia, and thence by the American Line to the port of Liverpool." On or about August 6th the initial carrier, the New York, Philadelphia & Norfolk Railroad Company, delivered to the defendant the Pennsylvania Railroad Company, at the point of connection with its road, the cars containing said cotton for transit to Philadelphia. The original cars containing the cotton reached the terminal of the Pennsylvania Railroad adjacent to the wharves of the American Line on the Delaware river on or before August 7th, and there stood with certain other cars of the same train, containing cotton shipped by J. E. Gilbert & Co., under independent contracts, destined for carriage by the same steamer of the American Line that was to take the cotton of R. A. Lee & Co. On August 7th a fire broke out in one of the cars containing bales of the Gilbert cotton. It was promptly extinguished. On the next day another fire broke out in a car containing 50 bales of the R. A. Lee & Co. cotton. This also was promptly extinguished. In each case the fire began inside the car, and there was no evidence whatever that either of the fires originated through any cause for which the carriers were in any wise responsible. This the learned judge below states in his opinion, and the statement is fully warranted by the proof. Upon the occurrence of these fires the defendant informed the agents of the American Line of the facts. On August 10th the defendant made an actual tender of the cotton here in question (the 250 bales of the Lee cotton) to the agents of the American Line, in time for the delivery of the whole of it before the departure of the vessel, which was to leave on August the 11th. The agents of the American Line declined to receive this cotton on the ground that it was dangerous, and the steamer, on the 11th of August, left without the cotton. The defendant gave prompt notice of the facts to the initial carrier, the New York, Philadelphia & Norfolk Railroad Company, "requesting orders for disposition," and through the original carrier R. A. Lee & Co., the shippers, were promptly notified of the facts. The defendant, not having heard from the initial carrier or the shippers as to the disposition of the cotton, applied to the American Line to know whether it could go forward on its next scheduled steamer, and in reply, by letter dated August 27th, the American Line, while insisting that it had contracted only for the steamer of August 11th, and that the contract was at an end, offered to carry the cotton on its steamer, the Ikbal, appointed to sail on September 15th, provided, upon an examination by an expert, the cotton was found free from danger; the shippers to bear one-half of the expense of the expert examination. The defendant immediately telegraphed this offer to the initial carrier, by whom it was communicated to the shippers, R. A. Lee & Co., but neither made any reply to the telegram. A third fire having occurred on September 2d in another of the cars containing bales of the Gilbert cotton, the American Line, by its authorized agent, sent the following notification to the agent of the defendant company:

"International Navigation Company.

"Philadelphia, September 6, 1900.

"Mr. F. H. Meyers, Philada.—Dear Sir: Since my letter of August 27th, offering to enter into a new arrangement, and carry forward the cotton on the next voyage of the Ikbal, provided it was proven free from danger, another fire has occurred on September 2d on car N. & W. 20,388, which, from all the attendant circumstances, the entirely spontaneous nature of the fire occurring inside a loaded car, the long period elapsing before it manifested itself, etc., indicates such a dangerous condition in the cotton that we cannot now, in safety to our ships, carry it forward under any circumstances. We regret that such is the case, and had hoped, prior to this last fire, that all further danger had passed.

"Yours truly,   .   Lee R. McKinstry, East-Bound Freight Agent."

The defendant sent prompt notice directly to R. A. Lee & Co. of this refusal of the American Line to carry the cotton forward under any circumstances, and urged them to take steps to dispose of the cotton, and to act at once. By letter of September 13th, R. A. Lee & Co. informed the defendant that they could not interfere, because (as they stated) they had sold this cotton to A. J. Buston & Co., of Liverpool (the plaintiff); and they further stated in their letter: "Mr. A. J. Buston sailed from Liverpool on the 7th inst. for New York, and we wired him at New York to-day to .call at Philadelphia on his way south to look after this cotton." Not having received any instructions as to the disposition of this cotton, the defendant, on September 18, 1900, caused it to be stored for safekeeping in the warehouse of D'Olier & Co., in Philadelphia. Before putting it into the warehouse, D'Olier & Co. examined the cotton, to see whether it was safe to take on storage, and, finding it to be free from danger, stored it in their warehouse, where it was thereafter kept ready for delivery to the owner or upon his order. R. A. Lee & Co., it appears from the evidence in this case, had drawn drafts (with the bills of lading indorsed and attached) on the plaintiff for the value of the cotton here in question, and these drafts the plaintiff accepted in Liverpool in ignorance of the fire, and subsequently paid them. On or about August 12th the plaintiff heard by cable in Liverpool that the 50 bales of cotton had been burned. The steamer of August the 11th arrived at Liverpool while the plaintiff was there, without any of the cotton, and this the plaintiff then knew. He testifies that he sailed from Liverpool to New York on the 4th or 5th of September. Upon his arrival in New York (and certainly before September 20th) the plaintiff was fully informed of all the facts touching this cotton. Mr. Lee, of the firm of R. A. Lee & Co., and Mr. Putnam, an insurance adjuster (both of whom knew of the storage of the cotton with D'Olier & Co.), met the plaintiff in New York, and advised him of all the circumstances. As early as September 20, 1900, the plaintiff had the fullest information of all that had occurred. Thereupon he took the position that he had nothing to do with the cotton until it was delivered to him in Liverpool, and claimed that R. A. Lee & Co. were bound to have it delivered to him there. Upon this point a dispute at once arose between the plaintiff and the shippers of the cotton. The plaintiff also set up a claim for the value of the cotton against the insurers. The

plaintiff gave no instructions whatever to the defendant; neither did the shippers; and the cotton remained on storage in the warehouse of D'Olier & Co. until the time of the trial of this case in April, 1902.

The facts, as hereinbefore stated, were shown by uncontradicted evidence, all of the evidence in the case coming from the plaintiff's side. This suit was brought on December 10, 1901, by A. J. Buston, doing business under the name of A. J. Buston & Co., against the Pennsylvania Railroad Company, to recover the sum of $12,828.80, which the plaintiff had paid for the 250 bales of cotton, and also special damages alleged to have been sustained by him "by reason of the action of the defendant in not forwarding the cotton."

The relation of the defendant to this cotton was altogether that of an intermediate carrier between the initial carrier, which issued the through bills of lading, and the American Steamship Line, which was to carry the cotton from Philadelphia to its ultimate destination. The defendant had not entered into any engagement whatever binding it to transport the cotton beyond its terminus adjacent to the wharves of the American Line on the Delaware river. Upon accepting the cotton from the initial carrier, the defendant's duty was to safely transport it to the point of connection with the American Steamship Line, and there tender the cotton to that line. This the defendant did. It made an actual and timely tender of the cotton to the American Line. The tender was refused because of the supposed dangerous condition of the cotton. The defendant promptly notified the initial carrier, and, through it, the shippers, of the facts, and asked for instructions. No instructions came. In response to an inquiry of the defendant, the American Line made an offer to carry the cotton on its next outgoing steamer, upon certain conditions. This offer was immediately communicated to the shippers, but no reply was made. Then the American Line notified the defendant that it would not, under any circumstances, carry the cotton. The defendant sent prompt notice of this peremptory refusal to the shippers, and called on them to act. Now, the shippers of this cotton were also the consignees thereof. The first information of the plaintiff's title came to the defendant in the shipper's letter of September 13th, in which the shippers wrote that the plaintiff had sailed for New York, and that they had wired him there to come to Philadelphia, and look after the cotton. This was the situation on September 18th,—more than a month after the tender and refusal,—and we think that, in the absence of instructions from any quarter, the defendant was fully justified in depositing the cotton for safe-keeping in the warehouse of D'Olier & Co., to await instructions. The general rule of law is that an intermediate carrier, who receives goods to be carried to a point short of their final destination, is bound only to use reasonable diligence to secure further transportation by tendering them to the connecting line, and, if acceptance be refused, then to notify the consignor or consignee, without unreasonable delay, and store or otherwise take care of the goods while awaiting instructions. Having done this, the liability of the carrier as such will cease, and the liability of a warehouseman be substituted. Elliott, R. R. §§ 1432, 1449; Schouler, Bailm. & C. § 609; Johnson v. Railroad Co., 33 N. Y. 610, 612, 88 Am. Dec. 416; Rawson v. Holland,

59 N. Y. 611, 615, 17 Am. Rep. 394. Upon the indisputable facts this case falls within the rule of law just stated. Whether or not the American Line had good cause for refusing to accept the cotton when tendered is immaterial here. The defendant was in no wise responsible for the actual or supposed condition of the cotton. The defendant was free from fault. There is not a particle of evidence tending to show that any of the mentioned fires occurred through negligence or want of proper care on the part of the defendant. So far as the defendant was concerned, its tender of the cotton to the connecting carrier on August 10th was good. We are not then able to adopt the view, expressed by the learned judge below, that the defendant was bound to make another tender of the cotton after D'Olier & Co. had made their examination and pronounced it free from danger. The examination was made by the warehousemen for their own safety. It was not the expert examination which the American Line had proposed in the offer which the shippers would not accept. Moreover, by its letter of September 6th, the American Line had notified the defendant that it would not carry the cotton under any circumstances. Certainly, in the face of that absolute and final refusal, the defendant was not bound to incur the expense and trouble of making a second, and an apparently vain, tender. Then again, the owners of the cotton had contracted for its shipment in the steamer sailing August 11th, and it was not for the defendant, in the absence of instructions, to take upon itself the responsibility of forwarding the cotton more than a month afterwards. Johnson v. Railroad Co., supra. But finally, R. A. Lee & Co., the shippers and consignees of the cotton, and their transferee, the plaintiff, had due notice of all the facts. Both were near at hand, —on the ground, it may be said. The defendant had the right to await instructions from the owner. Indeed, this was its plain duty under the circumstances. It was for the owner of the cotton to direct what should be done with it. The cotton was kept safely stored, subject to the plaintiff's order, and ready at all times to be delivered to him. More than this the plaintiff had no right to ask. Upon his own showing he had no cause of action against the defendant. Therefore the judgment of the circuit court in favor of the defendant was rightly rendered, and, for the reasons expressed in this opinion, is affirmed.