31 N.Y.2d 862 (1972)
In the Matter of De Graff, Foy, Conway & Holt-Harris, Respondent,
v.
McKesson & Robbins, Inc., Appellant.
Court of Appeals of the State of New York.
Argued October 6, 1972.
Decided December 6, 1972.
David L. Landy for appellant.
William F. Conway for respondent.
Chief Judge FULD and Judges BURKE, SCILEPPI, and GIBSON concur in Per Curiam opinion; Judge BREITEL dissents and votes to reverse in a separate opinion in which Judge JASEN concurs; Judge BERGAN taking no part.
*863 Per Curiam.
When a lawyer informs a prospective client, at the time he is retained, that his fee will be on a contingent basis, he should clearly indicate the percentage of recovery to be received. However, the petitioner's failure to specify the percentage in this case calls for neither a reversal nor even a remand for further findings.
The evidence strongly supports the conclusion of the courts below that the petitioner had made it clear, in the discussion with the client's representative prior to retention, that its fee would be on a contingent basis. Mr. John DeGraff and his son, members of the petitioner law firm, unequivocally so testified and, indeed, our dissenting brothers recognize that there was "some evidence" of an agreement "between the lawyers and McKesson to fix the fee on a contingent basis" (dissenting opn., p. 872). True, the trial judge made no express finding to that effect but since he decided that the petitioner "is entitled to a legal fee of $51,560.", the circumstance that that sum is actually 25% of the amount in excess of the State's proffered $420,000  the precise fee requested by the petitioner  establishes that that decision was necessarily based on a finding of an agreement to pay on a contingent basis. We simply note, as bearing on the worth of the services rendered, that the attorney who appeared as an expert for the petitioner testified that the "fair and reasonable value * * * considering them from a noncontingent basis" amounted to $55,000.
In short, there is ample evidence to support the determination below that the petitioner was entitled to a fee of $51,560, however computed. (Cf., e.g., Diemer v. Diemer, 8 N Y 2d 206, 209, 211-212; Rentways, Inc. v. O'Neill Milk & Cream Co., 308 N.Y. 342, 349.)
The order appealed from should be affirmed.
BREITEL, J. (dissenting).
There is no doubt that this unhappy litigation over a lawyer's fee reflects the not uncommon ingratitude of a client, despite attainment by eminent lawyers of a successful result, enthusiastically appreciated until the inevitable *864 bill for services had been rendered. Nor is there any disagreement in the court that the record would support the very fee awarded by the trial court and affirmed by the Appellate Division, if, but only if, appropriate findings of fact had been made with conscious and reasoned application of controlling rules of law. Instead, the essential findings are absent, and the rules of law have either been ignored or confused by the parties and the courts below.
Since this court, as will be discussed later, is powerless in the frame of this litigation to make its own findings, and both parties misconceived the theory of the cause of action and mingled impermissibly the applicable rules of law, there is no proper recourse except to reverse and remand for limited purposes. That is, there is no other recourse unless this court of law is to commit the irregularities and share in the confusion below. In order to minimize the burden of continued litigation both for the courts and the parties, it is not necessary to require a new trial, but only the making of findings in light of the applicable rules of law, with a limited right to the parties to amplify the record if so advised.
Moreover, the principles involved are not only important for this case but for the general governance of the Bar in relation to clients and fee-fixing. It is particularly important that in the house of the law, clients be satisfied, if it is at all possible, that the fees imposed on them are just, determined objectively, and in a reasoned manner for all to see.
For these reasons alone I am constrained to dissent and to set forth in detail the reasons upon which my conclusions are based. Moreover, as will be apparent, the applicable principles and rules are at hand in the precedents but have not been assembled before in a relevant and inclusive context. The circumstance presents the court with an opportunity and obligation of first impression. I do not understand that there is disagreement with the principles and rules upon which I rely. There is disagreement, however, over whether this court is free to conclude the litigation summarily by an affirmance, without new findings of fact and a limited opportunity to the parties to offer additional evidence.
After a hearing, the Court of Claims awarded a fee of $51,560, plus interest, the exact amount billed to the client computed at 25% of the recovery in excess of the State's final offer for the *865 property appropriated. The issue is whether in the absence of a finding of an agreement for a fee contingent on success, complete, or incomplete because the rate had never been fixed, the court in determining the fee may rely on a local practice to charge contingent fees in a range of percentages either to establish quantum meruit or, if there had been an incomplete agreement, to find the reasonable contingent rate.
The client, McKesson, on recommendation of its district vice-president located in Albany, Mr. Mueller, since retired, retained the law firm DeGraff, Foy, Conway & Holt-Harris to handle the impending appropriation by the State of its warehouse-office building in the Albany area. On February 9, 1967, Mr. DeGraff and his son met with Mr. Mueller in the latter's Albany office. For part of the conference, a Mr. Thompson, another McKesson vice-president who later succeeded Mr. Mueller, joined them. The DeGraffs testified to having then advised the McKesson officers that they would charge a contingent fee, but no percentage was mentional. Mr. DeGraff, Sr. testified that he also told Mr. Mueller there would be no fee if the recovery did not exceed the State's last offer. Mr. Thompson testified that during the part of the conference he attended there was no discussion about the fee. Mr. Mueller did not testify. Mr. DeGraff, Sr. testified that Mr. Mueller made no response when he explained the fee basis. Mr. DeGraff, Jr. testified that he had "no recollection of Mr. Mueller giving any answer to this suggestion one way or the other." The DeGraff testimony of the substance of conversations with Mr. Mueller was not contradicted.
In May, 1967, the State offered $420,000 for the property. Reaching no agreement, the State then appropriated the property, and McKesson filed a claim in the Court of Claims. After a three-day trial on June 9-11, 1969, over two years after the State's last offer, the Court of Claims awarded $626,250 plus interest, and a pro rata share of taxes.
After trial, but before the decision and award, McKesson sent the lawyers a letter of thanks "for the excellent job" and for "The tremendous amount of work which went into its preparation". On July 1, 1969, a week after the decision, the younger DeGraff wrote McKesson: "In going through the file, I notice that there apparently never was any correspondence concerning our fee. It is our standard practice in appropriation cases to charge one-third of sums collected in excess of the State's *866 highest offer, which in this case, I believe was $420,000.00. This, of course, would include any services rendered in event of appeal." McKesson informed Mr. DeGraff, Jr. by telephone that the proposed fee was too high. Mr. DeGraff, Jr., after consulting with his partners, responded that the firm would reduce their fee to 25% of the difference between the last offer and the award, not including interest and taxes, or $51,560.
At this time it was not known whether the State would appeal. Undecided whether to pay the 25% fee, Mr. Knapp, McKesson's assistant general counsel in the New York office, wrote Mr. Hudson, then general counsel in California: "Our real estate and division people believe the figure is entirely acceptable, but I thought it should be reviewed with you before final decision is made. We might point out that if there is an appeal and we are successful, the fee would still remain the same, i.e., there would be no additional charge for the appeal. Likewise, if the appeal went against us and the recovery were reduced, we would assume that the fee would be proportionately reduced." (During the proceedings McKesson had merged with Foremost Dairies, Inc. under the name Foremost-McKesson, Inc. Mr. Hudson, who had been general counsel to Foremost, became general counsel to the merged corporation.) Mr. Knapp's proposal to accept the fee, however, was rejected by Mr. Hudson. McKesson refused to pay, insisting in a letter that it be charged on a time basis. The lawyers then petitioned under section 475 of the Judiciary Law to have the court fix the fee.
All witnesses familiar with the practice in the Albany area, including a lawyer, Mr. MacArthur, called by McKesson, agreed that the general practice was to charge a contingent fee and that the rate varied from 30% to 40% of the excess over the State's last offer. Mr. MacArthur testified that there were also lawyers in the Albany area who would take condemnation cases on an hourly basis. He said that the general practice was "to have the fee arranged in advance in writing."
McKesson has insisted throughout that the fee should be determined on a time basis and that it had never agreed to a contingent fee. The DeGraff firm kept no time records, but estimated that Mr. DeGraff, Sr. spent 30-40 hours on the claim, and Mr. DeGraff, Jr. 210-220 hours. Given the estimated hours and hourly rates for the two DeGraffs, the highest fee on a time basis would be $23,850 and the lowest, $9,950.
*867 Mr. Peters, a lawyer testifying for the DeGraff firm, was asked to value the services on a noncontingent basis. His estimate was $55,000. His opinion was based on the result, the reputation of the firm, and the amount of work done.
The Court of Claims fixed the fee at $51,560, the amount suggested in the DeGraff prelitigation compromise and bill. In its opinion the court rehearsed some of the evidence, including the practice of contingent fees in the Albany area. Then the court stated: "This Court is aware of the custom and practice employed in establishing fee agreements in condemnation cases. It is the custom and practice in the Albany area to charge or bill attorney fees on a contingent fee basis in condemnation cases." The Court of Claims made no finding that McKesson agreed to pay on a contingent basis. Indeed, the DeGraff brief states that "[a] reading of Judge Cooke's decision will demonstrate that this determination was on a quantum meruit basis". But the court's emphasis on the Albany area custom and its award of precisely the amount of a 25% contingent fee indicate primary reliance in fixing the amount of the fee on the contingent fee practice.
Since, in affirming, the Appellate Division wrote no opinion, the findings of fact on which its conclusions of law are assumed to have been based and by which this court is bound, are those of the Court of Claims (People ex rel. Parklin Operating Corp. v. Miller, 287 N.Y. 126, 130-131; see Cohen and Karger, Powers of the N. Y. Court of Appeals, at pp. 507-509, esp. n. 57). Therefore, for purposes of this appeal there is no finding of an agreement, complete or incomplete, for a contingent fee. And this court may not supply the deficiency.
The principal McKesson contention is that neither local practice nor the law firm's practice of charging contingent fees are binding on it. It also contends that the preliminary discussion between the lawyers and McKesson's now retired officer, Mr. Mueller, about these practices without reaching an agreement or fixing the percentage rate of the fee was a nullity, and that neither the practices nor the preliminary conversations may support a fee. It argues further that the failure to fix the fee agreement precisely and completely in advance, preferably in writing, was not professional and should not be approved by courts having supervision over lawyers. It concludes that the fee should be based on quantum meruit fixing the reasonable *868 value of the services, without consideration of contingent risks of compensation, and that evidence bearing on contingent fees was irrelevant and, therefore, inadmissible.
The lawyers variously, and not always consistently, argued and testified that there was an agreement for a contingent fee, with the rate left open; that the evidence on the local practice and the rate of contingent fees charged was relevant; and that the fee fixed was a reasonable one based in quantum meruit.
A contingent fee is different than one determined by the reasonable value of the lawyer's services. If a favorable result is achieved, the fee calculated on a contingency should be substantially higher than one calculated with certainty of payment (e.g., Matter of Reisfeld, 227 N.Y. 137, 140; Buckley v. Surface Transp. Corp., 277 App. Div. 224, 226; Rader v. Thrasher, 57 Cal. 2d 244, 253; Babcock v. Public Bank, 366 Mich. 124, 132-134; Sincock v. Obara, 320 F.Supp. 1098, 1102, n. 8, and cases cited; 7 Am. Jur., 2d, Attorneys at Law, § 250, and cases cited). The reason is obvious. A fee contingent on success should be substantially higher because of the possibility that, despite the expenditure of time and effort, the lawyer may receive no compensation (e.g., Angoff v. Goldfine, 270 F.2d 185, 189 [1st Cir.]; Henlopen Hotel Corp. v. Aetna Ins. Co., 251 F.Supp. 189, 191 [D. C., Del.]; Perlman v. Feldmann, 160 F.Supp. 310 [D. C., Conn.]; Ronlee, Inc. v. P. M. Walker Co., 129 So. 2d 175, 176 [Dist. C. A., Fla.]). If there is a contingent fee agreement, the lawyer should properly receive compensation in a successful suit for the risk of no fee in an unsuccessful suit (cf. Sullivan & Cromwell v. Hudson & Manhattan Corp., 29 N Y 2d 523; Ann., Attorneys' Compensation  Amount, 56 ALR 2d 13, 36).
For the same reason that a contingent fee in a successful proceeding will be higher than a regular fee, contingent fees will be increasingly higher as the outcome of the proceeding becomes more speculative. For example, the kind of contingent fee a court will allow in a stockholders' derivative action is higher than it will allow in a less risky statutory reorganization proceeding (Marine Midland Trust Co. v. Forty Wall St. Corp., 13 A D 2d 118, 122-124 [per BOTEIN, J.], affd. 11 N Y 2d 679).
Historically, a contingent fee was justified by the poverty of the client, the judgment in a successful case being the source of funds from which to pay the fee (Code of Professional Responsibility, EC 2-20, adopted by N. Y. S. Bar Assn., eff. Jan. 1, *869 1970). Broader modern uses are illustrated by stockholders' derivative actions. Lawyer's fees are usually "contingent upon success, and paid from corporate funds, not by the stockholder clients. If stockholders had to pay or commit themselves to pay lawyers to prosecute lawsuits on behalf of a class constituting a number of other uncommitted stockholders as well as themselves, it is unlikely that many derivative actions would be instituted" (Marine Midland Trust Co. v. Forty Wall St. Corp., 13 A D 2d, at p. 122).
Contingent fees, however, have also been allowed where the client can afford and is likely to be willing to pay a reasonable fee, but then it is the professional responsibility of the lawyer to make sure that the client fully understands the relevant considerations and desires such an arrangement (Code of Professional Responsibility, EC 2-20). Of course, the responsibility is much greater where the client is an unsophisticated person, than where a corporate client is represented by experienced executives or its legal department.
Contingent fees fall into several categories. The fee may be a straight percentage of the entire recovery, a percentage of the recovery over some minimum, or may include an increment in addition to a low, fixed retainer or time-based fee. The percentage, where there is a percentage, may be adjusted depending on the range of the recovery, or different percentages may be applied to successive increments of the same recovery. Also, a contingent fee may be a fixed sum if the lawsuit is successful, or a schedule of fixed sums depending on the range of the recovery. In each instance, the relative risks borne by the lawyer and his client would be different, and the amount of the fee that would be reasonable in a successful case would vary.
It is not uncommon for those who offer or agree to employ others to make no statement in advance of the compensation to be paid. When this occurs the law generally invokes the standards of reasonableness to fix the compensation for services rendered (e.g., Randall v. Packard, 142 N.Y. 47, 56; 1 Williston, Contracts [3d ed.], § 41; Restatement, 2d, Contracts, Tent. Dr. No. 1, § 32, Comment e). Section 230 of Tentative Draft No. 5 of the Second Restatement of Contracts provides: "When the parties to a contract have not agreed with respect to a term which is essential to the determination of the rights and duties of the parties, a term which is reasonable in the circumstances *870 is supplied by the court." Where the lawyer and client agree that the fee is to be contingent, but do not fix the percentage, then it is proper for the court to determine a reasonable contingent fee (Simler v. Conner, 352 F.2d 138, 141 [10th Cir.]; cf. Hofing v. Willis, 83 Ill. App. 2d 384). In the Simler case, it was stipulated at a pretrial conference that a "contingent attorney's fee should be fixed by the Court" (id., at p. 142, n. 9). The court approved a 50% contingent fee on property obtained in a will contest. The court relied heavily on expert witnesses who testified that 50% was a reasonable percentage and that an Oklahoma statute permitted that amount. (Id., at p. 141.)
Only if the client agrees to pay his attorney on a contingent basis is the contingency a proper factor to consider in determining reasonable compensation (cf. 7 Am. Jur., 2d, Attorneys at Law, § 250, supra). As stated in Warner v. Basten (118 Ill. App. 2d 419), "[a]n agreement for a contingent fee can never be implied but must be a matter expressly contracted for between the attorney and the client" (118 Ill. App. 2d, at p. 431; see, also, 7 C. J. S., Attorney and Client, § 186, p. 1063). Absent an agreement, generally, the lawyer's fee is fixed in quantum meruit (e.g., Bakery and Confectionery Workers Int. v. Ratner, 335 F.2d 691, 695-697; cf. Deane v. Dukes, 39 Misc 2d 553, 555; Ann., Attorneys' Compensation  Amount, 56 ALR 2d, at pp. 48-49, supra; but cf. McCally v. Hartford Acc. & Ind. Co., 247 F.Supp. 444, 446-447 [D. C., D. C.]). As stated in a popular legal encyclopedia "[i]n the absence of a controlling contract, statute, or rule of court fixing the amount of compensation, an attorney is entitled to the reasonable value of services performed for his client" (7 Am. Jur., 2d, Attorneys at Law, § 235, supra; Hightower v. Trinity Church of Covington, 313 S. W. 2d 858, 859 [C. A., Ky.]; Meagher v. Kavli, 251 Minn. 477, 491-493; Beale v. King, 204 Va. 443, 446; Lambert & Litz v. Peters, 143 W. Va. 588, 593; 7 C. J. S., Attorney and Client, § 191, subd. a, par. [1], p. 1079, supra). Thus, with one possible exception noted below, a contingent fee may be imposed only if the client agrees (infra, pp. 871-873). Moreover, a contingent fee must compensate for the risk of no fee and, therefore, should not be used as the primary basis for fixing the reasonable value of an assured fee (Merchants' Fire Ins. Co. v. McAdams, 88 Ark. 550, 556-557; Morton County Bd. of Park Comrs. v. Wetsch, 136 N. W. 2d 158, 160 [Sup. Ct., N. D.]; *871 Henlopen Hotel Corp. v. Aetna Ins. Co., 251 F.Supp. 189, 191 [D. C., Del.], supra). Similarly, in the absence of an agreement for a contingent fee it has been held that, in an action limited to quantum meruit, a reasonable fee may not be augmented because the lawyer's services were in fact to be performed "gratuitously", if unsuccessful (O'Neill v. Crane, 65 App. Div. 358, 360).
In the Morton County case (136 N. W. 2d 158, supra) a North Dakota statute permitted the trial court, in an eminent domain proceeding, to include as costs "reasonable attorney's fees." The trial court awarded attorney's fees in the amount provided by the agreement between the condemnee and his attorney, a one-third contingent fee. The North Dakota Supreme Court reversed, holding that it was improper to award the condemnee "the attorney fees which were due under the provisions of the contingent-fee contract, without any reference to whether such fees were reasonable for the services rendered in the particular case for the results obtained, the customary charge for the services rendered, and the ability and skill of the attorney rendering such services" (id., at p. 160). It is interesting to note, but it makes no legal difference, that, on remand, the trial court awarded the same fee based on other evidence and the Supreme Court ultimately affirmed (Morton County Bd. of Park Comrs. v. Wetsch, 142 N. W. 2d 751).
An omitted, essential term, for which the court would usually supply a reasonable term, may be supplied "by a reasonable usage with respect to agreements of the same type if each party knows or has reason to know of the usage and neither party knows or has reason to know that the other party has an intention inconsistent with the usage" (Restatement, 2d, Contracts, Tent. Dr. No. 6, § 247). If there is a reasonable usage known to the parties which supplies an omitted term "it is a surer guide than the court's own judgment of what is reasonable" (id., at Comment a). To form a part of a contract the usage must be "`uniform, well settled, not in opposition to fixed rules of law, [and] not in contradiction of the express terms of the contract'" (e.g., Newhall v. Appleton, 114 N.Y. 140, 143-144; Rawson v. Holland, 59 N.Y. 611, 619; Walls v. Bailey, 49 N.Y. 464; cf. Hopper v. Sage, 112 N.Y. 530, 535; 5 Williston, Contracts [3d ed.], § 657; 13 N. Y. Jur., Customs and Usages, § 19). A *872 party may not be bound by usage unless he knew or should have known of the usage and its nature at the time the agreement was made. But if usage is sufficiently notorious, knowledge will be presumed (e.g., Rawson v. Holland, 59 N.Y. 611, supra; 13 N. Y. Jur., Customs and Usages, 25, supra). To be bound by a local usage a party must also know or have reason to know of it (e.g., Armstrong v. Lake Champlain Granite Co., 147 N.Y. 495, 502; Restatement, 2d, Contracts, Tent. Dr. No. 6, § 248, Comment c).
Only one case has been found in which it has been said that in the absence of an agreement a contingent fee may be imposed on a client on the basis of local usage in compensation of similar services (see McCally v. Hartford Acc. & Ind. Co., 247 F.Supp. 444, 446-447 [D. C., D. C.], supra). In the McCally case which involved a claim for personal injuries, the testimony was that the custom in personal injury cases in the District of Columbia was to charge a one-third contingent fee and that this custom extended even to situations where no agreement for a fee had been made. This testimony was undisputed. It is interesting, if not paradoxical, that the court, after commenting about the local custom allowed only half as much, based on the services performed (id., at p. 447).
In the instant case, there was no finding of an agreement between the lawyers and McKesson to fix the fee on a contingent basis, although there was some evidence to that effect. Hence, under the standards spelled out above, the court below should not simply have determined a reasonable percentage fee. Nor, absent proof of a binding usage in the area, should the court have relied primarily on the local practice for contingent fees.
Moreover, there was insufficient proof to establish a binding usage for fees in condemnation cases in the Albany area. The percentages charged varied from 30% to 40% of the excess over the State's last offer. Some lawyers applied the percentage to interest on the whole award, some to interest on the increment, and some only to the principal sum. The DeGraff firm practice with respect to other clients, though irrelevant except to the extent it might have been consistent with a uniform local practice, indicated that it varied the percentage and the extent to which the percentage applied to interest. A lawyer testified for McKesson that the local practice applied only when the fee was negotiated in advance and the agreement had been reduced to *873 writing. There was no proof of a general local practice to impose contingent fees in condemnation cases absent an agreement in advance.
Wholly irrelevant was the McKesson testimony that its practice elsewhere in New York State and throughout the Nation was to pay fees on a time basis. Moreover, much of this idiosyncratic practice related to the newly-merged corporation rather than the old McKesson company that had retained the lawyers in this case.
That there was no binding usage, however, does not mean that the local practice of charging contingent fees was inadmissible for all purposes. One consideration in determining a reasonable fee is the customary charges in the area for similar services (Code of Professional Responsibility, DR 2-106, subd. [B], par. [3]). Usual contingent fee practice should be admissible to show customary charges, after a proper foundation and for the limited purpose indicated. To determine a reasonable fee, the contingent fee should, however, be discounted to reflect an average fee for all cases, successful and unsuccessful. Again, in fixing a reasonable fee, since most lawyers would be unwilling to accept the uncertainty of not knowing how much their fee would be or when it would be received without an increment, the average contingent fee should be adjusted still lower to make it comparable to the assured fee. Even this process of adjustment would be only one permissible factor in determining a reasonable fee. Others would be the time expended, the novelty of the question, the likelihood that acceptance of the particular employment would preclude other employment, the amount in issue and the recovery obtained, the time limitations imposed by the client, the length of the professional relationship with the client, and the experience and reputation of the lawyer (Code of Professional Responsibility, DR 2-106).
The unfortunate problem in the instant case stems from the lack of a prior written fee agreement between lawyer and client. It would certainly have been more professional for the lawyers to have made their fee arrangement explicit at the outset, and in writing. Leaving the percentage of a contingent fee agreement, if there had been such an agreement, open until an award was obtained is unusual and undesirable, for which both the lawyers and the experienced corporate client are to blame. The lawyers were complimented for the professional quality of their *874 work both by the client and the hearing court. Professional standards of equal rank applied to the fixing of the fee would have prevented the unseemly clash between lawyer and client.
Consequently, there should have been a finding, absent from the case, whether or not there had been an agreement for a contingent fee, even if the rate had not been fixed; and if there had been such agreement, what a reasonable rate would be; and if there had been no agreement for a contingent fee, open or fixed, then a finding in quantum meruit in which the several factors for determining quantum meruit should have been considered (including contingent fees, if they are prevailing and almost universal, adjusted, however, as spelled out earlier, to reflect the absence of contingency). But there were no such findings and no supporting analysis to demonstrate an objective reasoned conclusion in accordance with applicable principles and rules. Moreover, the proper result, on any view, is not consistent with the theory of the litigation as it was pursued.
Accordingly, I dissent and vote to reverse the order of the Appellate Division, and to remand the proceeding to the Court of Claims to make new findings and conclusions, as it may deem appropriate, with power, for that purpose to receive additional relevant proof as the parties may be advised to offer.
Order affirmed, without costs.