381 F.Supp. 893 (1974)
HARRISBURG COALITION AGAINST RUINING THE ENVIRONMENT et al.
v.
John A. VOLPE, Individually and as Secretary of Transportation of the United States, et al., Defendants,
and,
The Honorable Milton J. Shapp, Governor of the Commonwealth of Pennsylvania, and The Honorable Harold Swenson, Mayor of the City of Harrisburg, Additional Defendants.
Civ. No. 71-143.
United States District Court, M. D. Pennsylvania.
July 12, 1974.
*894 Robert J. Sugarman, Philadelphia, Pa., Edward S. Finkelstein, Harrisburg, Pa., for plaintiffs.
S. John Cottone, U.S. Atty., Scranton, Pa., Thos. McKevitt, David Wells, Jos. Leahy, U.S. Dept. of Justice, Washington, D.C., Robert H. Raymond, Jr., Lewistown, Pa., Robert W. Cunliffe, Dept. Transp., Francis Haas, Jr., Harrisburg, Pa., Edw. Rothman, Asst. City Sol., Israel Packel, Atty. Gen., Theodore Adler, Dept. Atty. Gen., Harrisburg, Pa., Francis Locke, Fed. Hwy. Admin., Baltimore, Md., for defendants.

MEMORANDUM
NEALON, District Judge.
In this, the third and final stage of an action instituted to restrain the construction of a highway network partially through a city park, plaintiffs seek reimbursement of counsel fees and costs from the defendants. A complete statement *895 of the facts is contained in Harrisburg Coalition Against Ruining the Environment v. Volpe, 330 F.Supp. 918, (M.D.Pa.1971). A capsulized version follows.
Located in the south-central portion of the Commonwealth of Pennsylvania, the City of Harrisburg has a population of about 68,000 persons and serves as the state capitol. Within its boundaries are eight parks, including Wildwood Park, the subject matter of this litigation. Never idyllic, Wildwood Park enjoyed the reputation of being a major recreational asset for Harrisburg-area residents around the turn of the century. Since then, it has steadily degenerated in appearance, maintenance and use. Simultaneously, transportation problems in and around the city began to mount. To relieve severe traffic congestion, plans were developed in the early 1960s to construct portions of two highways through Wildwood Park, one known as the River Relief Route, and the other, Interstate Route 81. Both projects were jointly funded by the federal and state governments. After construction had begun, plaintiffs moved on April 7, 1971, to enjoin the federal, state and city governments from proceeding with further construction.
On May 11, 1971, after hearing five days of testimony and after considering the arguments of all parties, this Court:
(1) enjoined the further disbursement of federal funds for construction of the two highways;
(2) remanded the matter to Secretary of Transportation Volpe for further consideration of the requirements of Sec. 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 1653(f); Secs. 128 and 138 of the Federal-Aid Highway Act of 1968, 23 U.S.C. §§ 128 and 138; and Sec. 102(2) (C) of the National Environmental Act of 1969, 42 U. S.C. § 4332(2) (C); and applicable rules and regulations;
(3) dismissed the complaint with respect to Jacob Kassab, individually and as Secretary of the Department of Transportation of Pennsylvania; with respect to Harold Swenson, individually and as Mayor of the City of Harrisburg; and with respect to the City of Harrisburg; and
(4) determined that there was no evidentiary basis to support plaintiffs' claims of unconstitutional racial discrimination.
On January 23, 1973, the federal defendants, after having filed a final environmental statement with respect to the two highways and a memorandum detailing their compliance with this Court's May 11, 1971, order of remand, moved to dissolve the injunction and to dismiss the complaint. In response, on February 26, 1973, plaintiffs moved to revise the judgment entered May 11, 1971, and to amend the complaint. On May 8, 1973, the plaintiffs were allowed to amend their complaint so as to join the Hon. Milton J. Shapp, Governor of Pennsylvania, and the Hon. Harold Swenson, Mayor of Harrisburg, as additional defendants, and to assert claims under the Clean Air Act of 1970, 42 U. S.C. § 1857; the Federal Highway Act of 1970, 23 U.S.C. § 109(h), and the Pennsylvania Constitution. In addition, the Court ordered the action to be reinstated with respect to Jacob Kassab, individually and in his official capacity. A further evidentiary hearing, lasting seven days, was conducted before this Court in late May and early June, 1973, before the parties, at the strong urging of the Court, entered into an amicable settlement whereby they agreed, subject to class approval, to a realignment of the two highways in such a manner as to reduce the impact on Wildwood Park. On October 19, 1973, this Court approved the consent judgment and retained jurisdiction to decide the issues of counsel fees and costs.
Notwithstanding the traditional American rule disfavoring the allowance of counsel fees, as "part of the original authority of the chancellor to do equity in a particular situation", Sprague v. Ticonic National Bank, 307 *896 U.S. 161, 166, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939), federal courts may shift the expenses of litigation, including attorneys' fees, "when the interests of justice so require". Hall v. Cole, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). And "[whenever] overriding considerations indicate the need for such a recovery", Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391-392, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1972), the federal courts have not hesitated, even without statutory or contractual authority, to grant an award of counsel fees. See, e. g., Hall v. Cole, supra; Mills v. Electric Auto-Lite Co., supra; Yablonski v. United Mine Workers of America, 151 U.S. App.D.C. 253, 466 F.2d 424 (1972); Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970); Gartner v. Soloner, 384 F.2d 348 (3d Cir. 1967). Congress, of course, retains the right to circumscribe the equitable powers of a federal court in this regard. Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).
The Supreme Court has affirmatively recognized two instances where overriding considerations justify the propriety of an equitable judgment for counsel fees. To reprimand a party who has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons", 6 J. Moore, Federal Practice ¶ 54.77 [2], p. 1709 (2d ed. 1972), an award of counsel fees is utilized as a punitive measure. See, e. g., Hall v. Cole, supra, 412 U.S. at 5, 93 S.Ct. 1943; Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, n. 4, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Kahan v. Rosenstiel, supra, 424 F.2d at 167. And when a plaintiff's efforts result in the creation of a common fund or a common benefit, not necessarily monetary, an award of counsel fees operates to distribute the burdens of a successful litigation among those who will reap its rewards. Hall v. Cole, supra; Mills v. Electric Auto-Lite Co., supra; Sprague v. Ticonic National Bank, supra; Kahan v. Rosenstiel, supra, at 166-167.
The plaintiffs do not seriously urge that either of those considerations are present in the instant case, nor do I believe that they are. I have followed the course of this litigation closely since its inception, and I cannot say that defendants are in any degree culpable of bad faith, either in their conduct of this litigation or in the manner in which they attempted to perform their statutory responsibilities.
I also agree with the Court in La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal. 1972), appeal docketed, N. 73-1145, 9th Cir., Jan. 29, 1973, one of the cases upon which plaintiffs principally rely, that the common fund doctrine will not mold itself around the present case. See also Bradley v. School Board of City of Richmond, Va., 472 F.2d 318 (4th Cir. 1972), rev'd on other grounds, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). As a practical matter, fee shifting under the common fund or benefit rationale does not saddle the unsuccessful party with the expenses of litigation; rather, it taxes "the class that has benefited from them and that would have had to pay them had it brought the suit." Mills v. Electric Auto-Lite Co., supra, 396 U.S. at 397, 90 S.Ct. at 628. Such is not the case here, for the class of local citizens directly concerned in the outcome of this action is only a minute fraction of the class sought to be indirectly assessed. The plaintiffs include a community group, the Harrisburg Coalition Against Ruining the Environment, several students and faculty members of the Harrisburg Area Community College, and certain black residents of the uptown area of Harrisburg. What benefits have or will accrue to others not within the reach of Wildwood Park are at best a matter of surmise. Yet an award of fees assessed against either the federal or state governments would in reality be paid by all taxpayers, no matter how remote their interest in Wildwood Park. Cf. Natural Resources Defense Council, Inc. v. Environmental Protection Agency, 484 F.2d 1331, 1332, n. 1 (1st Cir. *897 1973); Tenants and Owners in Opposition to Redevelopment v. United States Department of Housing and Urban Development, No. c-69 324 SAW (N.D. Calif., Jan. 30, 1974); Comment, The Allocation of Attorneys' Fees After Mills v. Electric Auto-Lite Co., 38 U.Chi.L. Rev. 316 (1971).
Apparently in recognition of the above, plaintiffs rely on a newly developing concept. They assert that, as private attorneys general, they have rendered a substantial service to the public at large by effectuating a strong Congressional policy. The necessity and financial burden of private enforcement in matters such as this, they urge, are such as to make the award essential. While the purpose of the common fund doctrine is to avoid the inequity of allowing the beneficiaries of a successful litigation to escape payment of the attendant expenses, the thrust of the private attorney general theory is to supply weaponry for the vindication of a policy that Congress considered of the highest priority. See, e. g., Hall v. Cole, supra, at n. 7; Northcross v. Board of Education of Memphis City Schools, 412 U.S. 427 429, n. 2, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973); Wilderness Society v. Morton, 495 F.2d 1026 (D.C.Cir. filed April 4, 1974); Sierra Club v. Lynn, 364 F. Supp. 834 (W.D.Tex.1973), appeal docketed, No. 73-3378, 5th Cir., Oct. 10, 1973; Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972); Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971); La Raza Unida v. Volpe, supra. Cf. Bradley v. School Board of City of Richmond, Va., supra.
There is, of course, authority for the proposition that Congress considered the statutes which were applied in this action of such national priority that the courts in an appropriate factual situation could justifiably award counsel fees to a successful private attorney general.[1] But, assuming arguendo, the present validity and continued vitality of the private attorney general theory, I do not believe, as a matter of discretion, that an award of counsel fees is appropriate under the circumstances of this case.
From plaintiffs' most favorable vantage point, the net result of this lawsuit is (a) the realignment of the proposed highway routes thereby causing less intrusion in Wildwood Park, and (b) requiring the defendants to make a more thorough and complete examination of their statutory duties and more detailed findings and explanations of their actions under section 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 1653(f); the Federal Aid Highway Act, 23 U.S.C. § 101 et seq., 23 U.S.C. § 128 and sections 101 and 102 of the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4331, 4332(2)(C).
What benefits have, or will, accrue to the residents of Harrisburg in both the short and long term remain a matter of conjecture. Plaintiffs' actions did nothing to revitalize Wildwood Park; the most that they accomplished was to partially maintain the status quo and thereby *898 preserve whatever limited potential Wildwood Park possesses. Prior to the institution of this suit, the Park had fallen into such a state of disrepair and neglect that it bore no resemblance whatsoever to Overton Park, described in Citizens to Protect Overton Park, Inc. v. Volpe, supra, at 406, 91 S.Ct. 814. A sizeable portion of its usable flatlands had previously been granted to the Harrisburg Area Community College, another portion was utilized as a garbage dump, access to the park was limited, its facilities and resources were of questionable value, and it appeared that the cost of rehabilitation, such as dredging the lake, would have been prohibitive. None of these factors could have escaped the attention of City officials who, after this action was remanded to the Secretary of Transportation for further consideration, conducted public hearings and received substantial documentation before finally concluding that the Park was not of local significance.[2] Indeed, defendants argued strenuously that this litigation spawned more detriment than benefit because it resulted in the disruption for several years in the construction of a highway system vital to the needs not only of the citizens of Harrisburg and its environs, but to interstate travelers as well. In the present context, defendants also advance the caveat that an award of fees could encourage litigation alleging technical violations of numerous environmental statutes which would retard sorely needed projects and, as a result, force settlements in order to allow construction to proceed without needless delay. I am satisfied that the defendants' willingness to relocate these routes was not because of any capitulation to plaintiffs' contentions concerning the significance of the Park but because of a desire to get on with the project and avoid delay and increased costs in relieving Harrisburg's extremely dangerous and critical traffic problem. In addition, the question of adverse environmental impact, if any, while actively litigated, was never reached and determined by the Court. Consequently, the realignment[3] may have crowned plaintiffs' efforts with some success, but it falls short of "vindicating" or "effectuating" a strong Congressional policy. Furthermore, it cannot be said with assurance that any large number of people have benefited from this result or that plaintiffs "have advanced and protected in a very concrete manner substantial public interests". Wilderness Society v. Morton, supra.
With reference to any increased compliance with statutory requirements that plaintiffs' action may have brought about, it should be pointed out that the law, as it pertained to the issues raised in this case, was still in the early stages of development. The decision in Citizens to Protect Overton Park v. Volpe, supra, was not handed down until after the commencement of this action. The National Environmental Policy Act of 1969 was of recent origin and the manner of its applicability to this case uncertain. The named defendants could not have anticipated the action taken by the Supreme Court in Overton Park, nor by this Court in the instant case. For those reasons, defendants cannot be faulted for indecisiveness or hesitancy in undertaking and implementing new duties. They attempted to comply with the law as they understood it although, in certain instances, their original efforts fell short of that required. There is no indication that defendants exhibited any hostility toward environmental concerns.
Finally this case is significantly different from one in which plaintiffs demonstrate *899 that they have suffered the inhumanity and ignominy of racial discrimination. It is also not a case in which defendants, motivated by hopes of commercial gain or profit, callously waste the land or pollute the air and waters. Rather, defendants were involved in a purely governmental activity, the construction of a major highway network, part of which would have allayed the severe traffic congestion in and around the City of Harrisburg.
In sum, the beneficial effects this litigation may have had on stimulating more careful compliance with statutory requirements do not rise to the level of requiring an award of counsel fees.
This conclusion is not meant to diminish the value of plaintiffs' counsel in the present instance. His efforts, zeal, and professional competence were exemplary and he served his clients well. My decision is directed only to the inappropriateness of placing the responsibility for payment of his services on the defendants.
Assuming arguendo, however, that this is a proper case in which counsel fees should be assessed, against whom should they be levied? The contention of the federal defendants that they are insulated by the cloak of sovereign immunity is well founded, for ". . . even where `fee shifting' would be appropriate as a matter of equity, Congress has the power to circumscribe such relief." Hall v. Cole, supra, 412 U.S. at 9, 93 S.Ct. at 1948, 36 L.Ed.2d 702. And Congress, in enacting 28 U.S. C. § 2412 has done exactly that, by providing:
"Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action."
Since plaintiffs do not contend that the federal defendants have in any manner waived their immunity, cf. Natural Resources Defense Council v. Environmental Protection Agency, supra, this Court is precluded from awarding counsel fees against them.[4] Wilderness Society v. Morton, supra; Sierra Club v. Lynn, supra; Committee to Stop Route 7 v. Volpe, 346 F.Supp. 731 (D.Conn. 1972).
By virtue of the Eleventh Amendment, this Court is also without power to enter an award against the State defendants. "(T)he rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 1356, 39 L.Ed. 2d 662 (1974). It is also well established "that an unconsenting State is immune from suits brought in federal courts by its own citizens as well as by citizens of another State." Employees v. Department of Public Health and Welfare, 411 U.S. 279, 280, 93 S.Ct. 1614, 1616, 36 L.Ed.2d 251 (1973); Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Since the payment of counsel fees would work the same havoc on a state's fiscal planning as a judgment for damages, it falls squarely within the strictures of the Eleventh Amendment. Skehan v. Board of Trustees of Bloomsburg State College, 501 F.2d 31, 3rd Cir. 1974; Sincock v. Obara, 320 F.Supp. 1098 (D.Del. 1970).
A state may, of course, waive its immunity from suit, Parden v. Terminal R., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), but such consent will only be found where stated "by the most express language or by such overwhelming implications from the text as *900 will leave no room for any other reasonable construction." Edelman v. Jordan, supra, at 415 U.S. 673, at 94 S.Ct. 1361, quoting from Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909). Thus, "(t)he mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts." Edelman v. Jordan, supra, at 415 U.S. at 673, at 94 S. Ct. at 1361.
Plaintiffs have not cited, nor have I been able to discover any textual indication of the Commonwealth of Pennsylvania's willingness to open up its coffers for the payment of a monetary award. See Daye v. Commonwealth of Pennsylvania, 483 F.2d 294 (3d Cir. 1973). Moreover, even if it were found that the state had entered into a marriage of interests with the federal government by waiving its immunity, see Pennsylvania Environmental Council, Inc. v. Bartlett, 454 F.2d 613 (3d Cir. 1971), I do not believe that the Commonwealth could be found to have consented to the imposition of any greater degree of liability than the federal defendants have under 28 U.S.C. § 2412. Finally, insofar as plaintiffs may seek to impose personal liability upon the individual State or City defendants, they must fail since I have not found them culpable in any degree of intentional or malicious conduct. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Daye v. Commonwealth of Pennsylvania, supra; Dubree v. Commonwealth of Pennsylvania, 8 Pa. Cmwlth. 567, 303 A.2d 530 (1973). And, in any event, an award against them individually would be inappropriate based on the record in this case.
Any attempt to maintain that the Commonwealth voluntarily consented to the jurisdiction of this Court when Secretary Kassab withdrew his opposition to being rejoined as a defendant must fail. As plaintiffs concede in their brief, "upon plaintiffs' motion, the Court rejoined Secretary Kassab a defendant". Conceding for the moment that Secretary Kassab withdrew his opposition to being rejoined, it cannot be viewed as more than a desire on his part to have this case brought to an expeditious end. In addition, such rejoinder occurred prior to the time plaintiffs filed their petition for counsel fees and, accordingly, it cannot be said that his participation in this litigation was a valid waiver thereby exposing the Commonwealth and/or himself to an award of counsel fees.
Finally, plaintiffs seek reimbursement of counsel fees from the City of Harrisburg only if a judgment is not rendered against the federal and State defendants. Plaintiffs concede that (1) the City was the least active in furthering the project; (2) it has limited resources; and (3) it was the subject of the least adverse evidence. I can only conclude that an award against the City would be clearly inappropriate since the brunt of this litigation was aimed at the federal and State defendants.
Nevertheless, although 28 U.S. C. § 2412 prohibits an award of counsel fees, it specifically provides for the taxation of costs in favor of the prevailing party, within the discretion of the Court. There is no doubt that plaintiffs have prevailed in the first stage of this litigation, and although the second stage never progressed to final adjudication, the plaintiffs continued into that stage as the prevailing party and brought about a settlement which would never have been achieved had it not been for their efforts. See Sierra Club v. Lynn, supra. Accordingly, since plaintiffs by this suit have prevailed in inducing a more intense degree of introspection in the governmental agencies involved, they are entitled to an award of costs against the United States Department of Transportation. An appropriate order will be entered.
NOTES
[1] "It is hereby declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites." 49 U.S.C. § 1653(f); 23 U.S.C. § 138

". . . it is the continuing policy of the Federal Government, in cooperation with State and local governments, and other concerned public and private organizations, to use all practicable means and measures, including financial and technical assistance, in a manner calculated to foster and promote the general welfare, to create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, economic, and other requirements of present and future generations of Americans." 42 U.S.C. § 4331(a)
"But the very existence of the statutes indicates that protection of parkland was to be given paramount importance. The few green havens that are public parks were not to be lost unless there were truly unusual factors present in a particular case or the cost or community disruption resulting from alternative routes reached extraordinary magnitudes." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 412, 413, 91 S. Ct. 814, 821, 28 L.Ed.2d 136 (1971).
[2] Whether City officials made this determination in accordance with statutory requirements was never resolved by the Court but that issue, at the very least, presented a serious obstacle to plaintiffs' ultimate success on the merits.
[3] It must be remembered that these highways still run through the Park although the realignment requires less taking and increases whatever development potential that may exist.
[4] Significantly, the original relief granted here was only against the federal defendants. The action was dismissed as to the State and City defendants.