**NEIGHBORHOOD PRESERVATION COALITION, et al.**

**v.**

**H. Graham CLAYTOR, et al.**

Civ. A. No. 73–1506.

United States District Court,
E.D. Pennsylvania.

Dec. 30, 1982.

Edward M. Dunham, Jr., John Frazier Hunt, Philadelphia, Pa., for plaintiffs.

Francis J. Locke, Baltimore, Md., for U.S. Dept. of Transp.

Robert H. Raymond, Jr., Harrisburg, Pa., for Com. of Pa.

Gary Tilles, Asst. U.S. Atty., Michael Chuhinka, Asst. City Sol., Philadelphia, Pa., for City of Philadelphia.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

Concerned with the environmental and aesthetic effects of highway construction in an historic area of the City of Philadelphia, plaintiffs, the Neighborhood Preservation Coalition (NPC), Henry Cianfrani and Samuel Rappaport, brought this action against the Secretaries of Transportation for the United States and the Commonwealth of Pennsylvania in July of 1973. Plaintiffs sought a declaratory judgment proclaiming that the defendants violated numerous federal and state constitutional and statutory provisions by taking and permitting steps toward the construction of approximately two miles of federal interstate highway (I–95) within the Society Hill and Queens Village sections of the City of Philadelphia.

Plaintiffs also sought an injunction preventing the defendants from continuing to construct this section of I–95 until they were in full compliance with the relevant constitutional and statutory provisions and prohibiting the defendants from opening completed ramps on I–95 near Moore and Morris Streets in Philadelphia. For approximately one and one-half years, the parties engaged in extensive negotiations aimed at resolving their differences.

On December 22, 1975, this court permitted the City of Philadelphia to intervene as a defendant in this case. On December 29, 1975, this court approved a Final Judgment by Consent (Consent Decree) with regard to the aforementioned sections of I–95. Under the Consent Decree, defendants could construct all portions of I–95. However, the building of several interchange ramps along Front Street was conditioned upon the completion of specific procedures to determine the access needs between the Benjamin Franklin and Walt Whitman Bridges and the economic, social and environmental effects of means proposed to meet those needs. The parties agreed that the results of the study of access needs would be evaluated in accordance with the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq. (1980) and appropriate parts of the Code of Federal Regulations. The parties also agreed to meet several times during the study of the access needs. Moreover, defendant Pennsylvania Department of Transportation (Penn Dot) agreed to secure the services of an independent noise consultant, to meet periodically with plaintiffs and the consultant, and to monitor vibrations at sites considered critical and particularly susceptible to damage from vibration. Mindful of the valuable historic area involved, the defendants agreed to manage construction activities so as to preserve the safety, peace and quiet, and environmental quality of adjacent buildings and neighborhoods. The court retained jurisdiction to enable the parties to the Consent Decree to apply to it for further orders, directions, or modifications.

In July of 1979, the defendants sought an order to modify the Consent Decree by permitting them to open the portions of I–95 which were subject to the Consent Decree. Plaintiffs opposed this motion. The Greater Philadelphia Chamber of Commerce and the Northeast Philadelphia Chamber of Commerce sought and received leave to file briefs as amici curiae. The court heard the parties' arguments, then approved a stipulation to amend the Consent Decree by permitting defendants to open the aforementioned sections of I–95 and requiring defendants to erect noise barriers at specified sites.

Now before me are plaintiffs' motion for attorneys' fees, defendants' responses thereto, and plaintiffs' reply brief. Plaintiffs assert entitlement to fees on both statutory and common law grounds. Having considered the parties' briefs and having heard their arguments in open court, I conclude that plaintiffs are not entitled to counsel fees under any of the proffered theories. Accordingly, I will deny plaintiffs' motion.

▮ Under the "American Rule", absent either a statutory or contractual provision for the award of fees or an exception to the rule, litigants bear their own attorneys' fees. *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475 (1967). The plaintiffs claim entitlement to counsel fees pursuant to a statutory provision, i.e., the 1977 amendments to the Clean Air Act (Act), which are codified at 42 U.S.C. § 7604. In pertinent part, § 7604(a) provides

> [A]ny person may commence a civil action on his own behalf—(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter.... The district

court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation....

*Id.* As § 7604(d) states, a court which issues a final order in any action brought pursuant to subsection (a) may award costs of litigation, including reasonable counsel fees, to any party whenever the court deems such an award appropriate. *Id.* § d. However, defendants assert that the 1977 amendments are not pertinent to this case because they were enacted after the Consent Decree was approved.

First, plaintiffs rely on dicta in *National Resources Defense Counsel v. EPA,* 484 F.2d 1331 (1st Cir.1973), where the petitioners sought counsel fees for their efforts in obtaining the compliance of the EPA with the Act, and *Friends of the Earth v. Carey,* 535 F.2d 165 (2d Cir.1976), a suit to enforce a state air pollution abatement plan. This dicta, however, is not particularly persuasive because those cases were brought pursuant to a subsection of the Act which is not relevant to the instant case. Plaintiffs also urge the court to disregard the restrictive definition of emission standard or limitation suggested by the 1970 Act and adopted in *Citizens of Georgetown v. Washington,* 535 F.2d 1318 (D.C.Cir.1976), where plaintiffs sought to enjoin the completion of two office buildings until air quality permits were obtained. The Court of Appeals for the District of Columbia Circuit held that § 7604 confers jurisdiction only over suits against polluters and that the allegations did not "satisfy the statutory requirement that the government instrumentality be alleged to be in violation of an 'emission standard or limitation.'" *Id.* at 1320–21.[1] Finally, plaintiffs cite 42 U.S.C. § 7604(f), another of the 1977 amendments to the Act, in which the definition of emission standard or limitation was expanded to include "any condition or requirement under an applica-

---

1. *See also Hancock v. Train,* 426 U.S. 167, 197, 96 S.Ct. 2006, 2021, 48 L.Ed.2d 555 (1976) (Court draws distinction between substantive requirements, such as emission limitations, and all other state implementation plan measures);

*League to Save Lake Tahoe, Inc. v. Trounday,* 598 F.2d 1164, 1169–70 (9th Cir.1979) (if it were not applying the 1977 amendments to the Act, court would find no jurisdiction under the 1970 Act).

ble implementation plan relating to transportation control measures, [or] air quality maintenance plans . . . ."

■ Defendants note that the 1977 amendments to the Act were promulgated five years after the Federal Highway Authority approved the Final Environmental Impact Statement concerning I–95, four years after plaintiffs instituted this action, and two years after the parties entered into the Consent Decree. Thus, defendants believe that this court should decide the instant motion based upon the provisions of the 1970 Act and the case law relevant thereto, rather than the 1977 amendments. Because the legislative history does not reveal any congressional intent to give the 1977 amendments retrospective effect, I agree that the pre-amendment Act controls the disposition of the instant motion.

■ Before the 1977 amendments, indirect sources of pollution were not mentioned in the Act.[2] *Brown v. EPA,* 566 F.2d 665, 670 (9th Cir.1977). The mere building, owning or managing of highways was not deemed to make the state or federal government a polluter within the meaning of 1970 Act. *Id. Accord United States v. Ohio Department of Highway Safety,* 635 F.2d 1195, 1204 (6th Cir.1980). Since the defendants are not polluters within the meaning of the 1970 Act, I find no statutory justification for awarding counsel fees against them.

■ Plaintiffs also claim entitlement to counsel fees under the common benefit and bad faith exceptions to the American rule. Plaintiffs concede that, absent a statutory basis, 28 U.S.C. § 2412 prohibits the recovery of attorneys' fees from the United States. The court has found that no such statutory basis exists. Accordingly, plaintiffs cannot recover fees against the United States under either common law theory. Nevertheless, the court must decide whether either common law theory provides a basis for recovery against the state or city.

■ Fee awards under the common benefit exception require a two tier analysis. The threshold requirement is that plaintiffs be declared a prevailing party in this action. It is of no moment that the plaintiffs did not obtain a declaratory judgment or injunction against the defendants, for "attorneys' fee awards can be awarded to parties who do not ultimately obtain the whole relief sought. . . ." *NAACP v. Wilmington Medical Center, Inc.,* 689 F.2d 1161, 1167 (3d Cir.1982).[3] For purposes of a fee award, plaintiffs may be considered a prevailing party as long as they achieved some of the benefits sought in bringing this lawsuit. *Id.* at 1167–68.

■ Plaintiffs instituted this action in an attempt to decrease the noise and air pollution attendant to the construction and operation of I–95, to protect valuable old buildings from damage due to vibration, and to assure the continued aesthetic appeal and historic value of their neighborhood. Inasmuch as several provisions of the Consent Decree speak to these concerns, plaintiffs undeniably achieved some of the benefits they sought. Accordingly, this court concludes that plaintiffs are a prevailing party.

At the core of cases in which courts have decided to exercise their discretionary equitable powers by awarding fees to plaintiffs under the common benefit exception is a sense that it would be unjust to force plaintiffs to bear all the fees for litigation which

---

2. Enacted in 1970 and formerly codified at 42 U.S.C. § 1857h–2, § 304(a) was almost identical to 42 U.S.C. § 7604(a). However, § 304(f) (formerly codified at 42 U.S.C. § 1857f) differed substantially from the current provision, 42 U.S.C. § 7604(f). In § 304(f), the term "emission standard or limitation" was restricted to "(1) a schedule or timetable of compliance, emission limitations, standard of performance or emission standard, or (2) a control

or prohibition respecting a motor vehicle fuel or fuel additive, which is in effect under this Act . . . or under an applicable implementation plan." *Id.*

3. Moreover, settlement by Consent Decree, without more, does not bar recovery of fees by plaintiffs. *Mental Patients Civil Liberties Project v. Hospital Staff Civil Rights Committee,* 444 F.Supp. 981, 986 (E.D.Pa.1977).

has benefited others.[4] Thus, under the second requirement of this exception, plaintiffs must be found to have conferred a common benefit on an ascertainable class of persons by bringing a lawsuit which protected a fund or property in which these persons have an interest. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Plaintiffs submit that this litigation "has been enormously expensive and has benefited a great number of people." Plaintiffs' Brief at 20. Plaintiffs further claim that a sizable segment of the city and state citizenry, i.e., the fifteen thousand residents of the neighborhoods affected by this litigation, has directly and substantially benefited from it, while the four and one-half million residents of metropolitan Philadelphia and "untold numbers of general public throughout Pennsylvania and the United States" derived pleasure from the maintenance of the history, character, and environment of the area. *Id.* at 25–26. Plaintiffs argue alternatively that they are seeking counsel fees, "through the Commonwealth of Pennsylvania and the City of Philadelphia, [from only] those identifiable fifteen thousand persons . . . residing in the vicinity of the ramps and thruways of I–95 who have benefited most substantially." *Id.* at 26.

Defendants contest plaintiffs' assertions on a number of grounds. First, they submit that the common benefit exception should not be applied to the case at bar because plaintiffs claim to represent a broad, nebulous, and therefore unascertainable group. More specifically, defendants advert to the difficulties in determining the ultimate beneficiaries of this case. *See Harrisburg Coalition Against Ruining the Environment v. Volpe,* 381 F.Supp. 893 (W.D.Pa.1974); *LaRaza Unida v. Volpe,* 57 F.R.D. 94, 97 (N.D.Cal.1972). Since plaintiffs have vindicated their own rights, but not those of every citizen of Philadelphia

and Pennsylvania, defendants also contend that the rationale for awarding counsel fees in labor law, civil rights, and stockholders' derivative suits[5] does not apply here. Moreover, defendants suggest that, by awarding fees in a case such as this, the court would open the sluicegates for environmental litigation to such a great degree that few construction projects would ever be completed. Finally, defendants argue that the eleventh amendment to the United States Constitution bars the award of counsel fees against the Commonwealth of Pennsylvania.

Defendants distinguish the cases upon which plaintiffs rely. For example, *Mills* was a stockholders' derivative suit in which the defendant was a corporation whose shareholders were enriched by the litigation. 396 U.S. at 392, 90 S.Ct. at 625. Thus, fairness dictated that the defendant bear the cost of the litigation. Similarly, in *Hall v. Cole,* the Court declared that, by vindicating his right to free speech, the respondent union member rendered a great service to his union and to all of its members. 412 U.S. at 8, 93 S.Ct. at 1947. I agree with defendants that the beneficiaries and benefits in *Hall* and *Mills* are distinct from those in the instant case. Here, plaintiffs claim the right to fees from only fifteen thousand people, but seek to tap state and city coffers. Moreover, many community groups and individuals in Philadelphia openly and vehemently opposed plaintiffs' actions. The benefits achieved by plaintiffs burdened other city and state residents who wanted I–95 to be completed swiftly. This was a decidedly different situation from that in *Mills* and *Hall.*

In addition, defendants rely on *Harrisburg Coalition,* a case very similar to the instant one, in which a community group and other individuals attempted to enjoin the construction of a highway network

---

4. "Fee shifting under the common benefit exception does not burden an unsuccessful defendant; it taxes the class that has benefited . . . and that would have had to pay [the counsel fees] if it had brought the suit." *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 397, 90

S.Ct. 616, 628, 24 L.Ed.2d 593 (1970). *See also Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Sprague v. Ticonic Bank,* 306 U.S. 161, 59 S.Ct. 412, 83 L.Ed. 563 (1939).

5. *See* cases cited *supra* note 4.

through a city park. Plaintiffs sought counsel fees after the court had dismissed the complaint in part, issued a temporary injunction, remanded the matter to the state Secretary of Transportation and approved a consent judgment. 381 F.Supp. at 894–96. Judge Nealon found that the common benefit doctrine would "not mold itself" around a case in which the class of citizens directly affected by litigation was but a small fraction of those who would be indirectly assessed. *Id.* at 896. Furthermore, the court concluded that 28 U.S.C. § 2412 prohibited an award of counsel fees against the United States, that, absent a waiver of immunity, the eleventh amendment barred such an award against the state,[6] and that fairness precluded an award against the city where, as here, the "brunt of this litigation was aimed at the federal and State defendants." *Id.* at 899–900. Accordingly, the court did not award counsel fees to plaintiffs.

The facts in *Harrisburg Coalition* are very similar to those in the case *sub judice.* Moreover, I find the analysis of Judge Nealon thorough and very persuasive. Because I agree with Judge Nealon's conclusion that the common benefit exception should not be applied under the instant circumstances, I, too, decline to award counsel fees to plaintiffs based on that theory.[7]

Finally, plaintiffs assert entitlement to counsel fees on account of defendants' bad faith. The Third Circuit has held that prelitigation obduracy, bad faith, or vexatious conduct during the course of litigation may form the basis for an award of fees against the sovereign. *Skehan v. Board of Trustees,* 538 F.2d 53 (3d Cir.1976). However, there is no evidence that the federal, state, or city defendants acted obdurately or in bad faith at any time during these proceedings. Accordingly, I find no basis for awarding fees on this ground.

6. *See Skehan v. Board of Trustees,* 501 F.2d 31, 42 & n. 7 (3d Cir.1974).

7. The court notes plaintiffs' citation of *Sims v. Amos,* 336 F.Supp. 924, 350 F.Supp. 691 (M.D. Ala.), *aff'd,* 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972) (award of counsel fees where court found that litigation was precipi-

tated by defendants' deliberate failure to reapportion and submission of obviously unacceptable plans). *Sims,* however, does not compel the award of counsel fees where, as here, the court has not found and defendants have not conceded that constitutional or statutory rights were violated.